No. 40.—WILLIAM H. WHITE, plaintiff in error, *vs.* WILLIAM F. CREW, defendant in error.

[1.] Where an illegal or fraudulent contract has been made, neither Courts of Law or Equity will interpose to grant any relief to the parties, but will leave them where it finds them, if they were equally cognizant of the illegality or participated in the fraud, unless in cases where the public policy would be promoted.

[2.] Where A was liable as indorser for B, and B executed a mortgage to indemnify him against loss, and the property is sold under the foreclosure; and B, on the day of sale, co-operates with A, to have the property knocked off to him at an undervalue, so as to enable A to save himself harmless by a re-sale: *Held,* that an agreement to that effect, and that the proceeds should be applied to the extinguishment of the original indebtedness, is neither fraudulent nor void, but binding on A; and that having taken the Sheriff's deed and gone into possession of the premises, and realized a large profit from the re-sale, Equity will compel a specific performance of the contract.

[3.] Sales by auction are within the Statute of Frauds. Whether judicial sales are exempted from the operation of the Act? *Quere?*

[4.] Will a Court of Equity relieve, in any case, against a mistake in pleading, or in the conduct of a cause at Law? *Quere?*

[5.] Where the matter in which the interposition of Equity is asked, could not have been determined at Law, it is not within the estoppel of the legal decision.

[6.] A parol contract, for the purchase and re-sale of the land of the defendant, the proceeds to be applied to the extinguishment of the judgment under which the property was sold, is not such an interest as would vest in the assignee in bankruptcy, under the Act of 1841.

[7.] The rule in Equity, that where a replication is filed, all the allegations of the answer, which are responsive to the bill, shall be taken as true, unless disproved by two witnesses, or one witness and corroborating circumstances, explained.

[8.] Circumstances, alone, in the absence of a positive witness, may be sufficient to over-rule the denial in the defendant's answer; and that, too, where he answers on his own knowledge.

[9.] The rule, at most, is always subject to this modification: that "if there are circumstances sufficient to turn the scale, it ought to be turned; the oath of a a by-stander, with circumstances corroborating it, being better than that of an interested person". Per Lord Chancellor *Thurlow,* in *Pember vs. Mathers,* (1 *Bro. Ch. Cases,* 52.)

In Equity, in Henry Superior Court.   Tried before Judge
STARKE, October Term, 1853.

This bill was filed by William F. Crew, against William H.
White and John Neal, for discovery, relief and injunction.

The bill states, that in April, 1840, William F. Crew, with
White and others as his indorsers, executed a note to John
Neal, on which Neal obtained judgment against the parties,
and execution issued thereon 3d November, 1841; that Crew
executed to said indorsers a mortgage upon lots of land Nos.
61, 68 and 69, in the 6th district of Henry County, which mort-
gage was foreclosed at the October Term, 1841, of Henry Su-
perior Court, on which judgment of foreclosure a *fi. fa.* was is-
sued and levied upon the lands, and the same exposed to sale ;
that Crew being in debt, and willing to save his said indorsers
harmless, it was agreed between Crew and White, that notice
should be given the by-standers and bidders, that the ob-
ject of the sale was to perfect titles and save the indorsers from
loss ; and that Wade H. Turner should bid off the lands for a
nominal sum of money, and then turn over said bid for White's
benefit, who was then to sell the lands at private sale, and ap-
ply the proceeds of said sale to the payment of Neal's claim.

That by virtue of this agreement, the land was put up and
sold, and knocked off to the said Turner for $102 50, and ti-
tles made to White by the Sheriff; that the land was then
worth $1500, and would have sold for that sum, but for the
agreement, that Crew and his friends were not to bid for it,
and White was to take titles to it and sell it for the benefit of
Crew.

The bill further states, that in August, 1842, White sold
lots Nos. 65 and 69, for $800; and in January, 1845, sold lot
No. 61, for the sum of $250.

That in 1842 Crew owned lot No. 56, in said district, and
being anxious to pay off the Neal claim, and to indemnify
White, who was the only solvent indorser, at that time, con-
sented that said lot should be sold, under a *fi. fa.* outstanding

against Crew, as indorser for E. F. Knott, in favor of Havland, Risley & Co. ; that it was agreed that White should bid off the land, and that it should be publicly proclaimed, on the day of sale, that it was sold to perfect titles to White ; and it was further agreed, that White should sell said lot privately, and allow Crew the full amount of such sale, to be credited on Neal's *fi. fa.* if Crew would allow the land to be sold at a mere nominal sum ; and White, accordingly, bid off the same at $25, and subsequently sold it for $300, on a credit, to James J. Mitchell, who paid him $75, and failing to pay the balance, White filed a deed and had the land re-sold for $400 ; which sums, together with the proceeds of the mortgaged lands, should have been applied to the payment of the Neal *fi. fa.*—as also $150, the rent of the lands while in White's possession, and which, it was agreed, should thus be applied.

The bill charges that the Neal *fi. fa.* has been thus paid off and discharged by Crew, and that White is controlling said *fi. fa.* and fraudulently combining with Neal, to vex and harass complainant, and has ordered the *fi. fa.* to be levied upon complainant's property.

The bill prayed that said defendants be perpetually enjoined from proceeding with said *fi. fa.*; and that White be decreed to account with and to complainant, for the value of said lands, and to perform, specifically, the contract and agreement in relation thereto.

In his answer, White denies all the statements made in the bill ; pleaded the Statute of Frauds and Perjuries, and demurred to the bill for want of equity.

The defendant, Neal, denied all the charges and allegations in the bill, so far as the same applied to him ; and upon the coming in of his answer, the injunction was dissolved, as to him ; and the *fi. fa.* allowed to proceed.

On the trial of the cause between complainant and the defendant, White, at October Term, 1854, of Henry Superior Court, after the bill was read to the Court and Jury, Counsel for defendant moved to dismiss the bill—

1st. Because there was no equity in the bill.

2nd. Because the contract or agreement therein set forth, was for the fraudulent purpose of evading the payment of Crew's debts, other than the Neal claim; and was therefore void.

3d. Because the said contract not being in writing, was obnoxious to the Statute of Frauds and Perjuries.

Which motion the Court over-ruled, and Counsel for defendant excepted.

Wade H. Turner, sworn by complainant, testified, "that the lands were knocked off to him, at the price of $102 50—turned over the bid to Wm. H. White. I held older *fi. fas.* and wanted my money. White told me there was plenty of property to pay my *fi. fas.* and wanted me to let them alone, as it was the best they could do—turned over the lands to White, for Crew's benefit, as I thought; if I had not thought so, I would have held on to the land. Neither Crew nor White applied to me to bid for the lands before the sale." To the introduction of this testimony, defendant objected. The Court over-ruled the objection and defendant excepted.

Wm. Markham sworn : White told witness, after the sale, that there was an understanding between Crew and himself, and he intended to sell the lands for Crew's benefit".

Enoch Jackson, sworn : "White told witness, after he had sold the lands, that he had sold them for $200 more than he was security for Crew, which would pay him for his trouble; but that he did not charge Crew anything, but intended to give the $200 to Crew or his family".

The Neal *fi. fa.* was then read in evidence; also all the deeds to the said lands, made to White.

Defendant then offered to read in evidence an affidavit of illegality, filed by Crew, to said *fi. fa.* before the filing of said bill, to show that the defence to the *fi. fa.* set up in the bill, was embodied in the affidavit, and that said affidavit of illegality had been dismissed. Also, offered in evidence Crew's certificate in bankruptcy, dated the 12th January, 1843, to show that Crew could not recover against White a demand which vested in the assignee in bankruptcy.

The Court rejected both the certificate and the affidavit of illegality, and Counsel for defendant excepted.

The Court charged the Jury, that the execution of the deeds to the land by the Sheriff, to White, was a part performance of the contract, on the part of Crew, and took the case out of the Statute of Frauds and Perjuries; that where the answers of the defendant were responsive to the charges of the bill and denied those charges, the complainant was bound to over-rule the answers, by the evidence of one witness and corroborating circumstances.

To this charge of the Court, Counsel for defendant excepted; and on these several exceptions error is assigned.

MOORE & EZZARD, for plaintiff in error.

DOYAL & SPEER, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] In the judgment of this Court, the defendant, White, has totally misapprehended the nature of the agreement entered into between the complainant and himself. We recognize the general rule, that where an illegal or fraudulent contract has been made, neither Courts of Law nor Equity will interpose to grant any relief to the parties, but will leave them where it finds them, if they were equally cognizant of the illegality or participated in the fraud, unless in cases where the public policy would be promoted.

[2.] But such is not the character of the contract charged in this bill. *English vs. Tomlinson et al.* (8 *Humphrey's R.* 378.) For aught that appears to the contrary, it was entered into for the very laudable purpose of enabling White and the other indorsers of Crew on the Neal debt, to indemnify themselves against loss on account of their liability on that debt. And in this sense alone, and in no other, can it be said to have been made for the benefit of the complainant.

[3.] In opposition to the specific performance prayed for by this bill, the Statute of Frauds is insisted on.

That sales by *auction* are within the Statute, is not now an open question. *Blagden vs. Braglear* (12 *Ves.* 466.)   *Kennorthy vs. Schofield* (2 *Barn. & Cress.* 947.)   *Walker vs. Constable* (1 *Bos. & Pul.* 306.)   *Emmerson vs. Heelis* (2 *Taunt.* 38.)   *White vs. Proctor* (4 *Taunt.* 209.)   *Hinde vs. Whitehouse* (7 *East.* 558.)   But in the case of the *Attorney General vs. Day* (1 *Ves.* 218), while Lord *Hardwicke* admitted that sales by *auction* were not excepted, he distinguished *judicial sales* from other sales by auction, holding that the former were necessarily exempted from the operation of the Statute.    Without extending the inquiry further, as to whether or not the policy of the Statute applies to all public as well as private sales, we hold, that under the facts of this case, it would be a gross fraud not to compel the defendant to execute his part of the agreement. To save him harmless, such proclamations were made on the day of sale as greatly to depress the market price of the property, by keeping off bidders.   The land was cried off and turned over to him.   He took the Sheriff's deed—has re-sold it, according to the understanding between complainant and himself, at a large profit, and now refuses to execute his part of the agreement, to apply the proceeds to the extinguishment of the Neal debt.   We repeat, it would be a fraud upon Crew, and flagrantly inequitable to suffer his refusal to work such a prejudice.   See *Dart's Vendors and Purchasers of Real Estate, note* 1, *p.* 477.

And the Court was right in not allowing the affidavit of illegality, interposed by Crew against the Neal *fi. fa.* before this bill was filed, to be read in evidence.   The object of this testimony was to show that the question made by the bill was *res adjudicata.*

[4.] It is not necessary to question the doctrine that a Court of Equity will not relieve against a mistake in pleading, *or in the conduct of a cause at Law.*   There is, however, respectable authority to be found, in support of the affirmative of this proposition.   (*Anonymous,* 1 *Vernon,* 119, *and cases cited in the note,* 1st *American Edition.   Wesley vs. Thomas,* 6 *Harr. & Johns.* 24.   *Lanmat vs. Bowley, Id.* 500.   *Price vs. Fu-*

*qua,* 4 *Munt.* 68.   *See Waterman's Eden on Injunctions,* 3d *Edition, p.* 21, *note.*)

[5.] The matter on which the intervention of Equity is here asked, could not have been determined at Law; and consequently, it cannot be within the estoppel of the legal decision. Perhaps it was for this very reason, that the affidavit of illegality was abandoned by the defendant, Crew, or was dismissed by the Court. There was, in fact, no judgment at Law, as to the grounds for relief prayed for in this bill.

[6.] We confess that we are unable to comprehend, very clearly, the object in offering in evidence the certificate in bankruptcy, which was obtained by Crew the 12th of January, 1843. The bill of exceptions states that it was to show that Crew could not recover, against White, a demand which vested in the assignee in bankruptcy. But it does not appear that the claim was upon the debtor's schedule. But whether it was or was not, he does not seek to enforce a moneyed demand against White; but the performance of a duty or obligation, namely: to compel him, in pursuance of his undertaking, to apply the fund arising from the re-sale of the land, which he bought and held on trust, for the benefit of Crew, to the extinguishment of the Neal judgment.

[7.] The charge of the Court is excepted to. The only thing in it, not already noticed, is the concluding clause : that the complainant was bound to overcome the answer, by the evidence of one witness and corroborating circumstances.

The error assigned here is, that the Court should have instructed the Jury, that to overcome the answer of the defendant, which is responsive to the bill, that in addition to the testimony of one witness, the *circumstances* should equal, in strength, the proof of another witness. But such is not our understanding of the rule. True, from the manner in which it is usually stated in works on Equity Practice, this inference might seem to be warranted: that where a replication is put in, and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill, shall be taken as true, unless they are disproved by two witnesses, or by one wit-

White *vs.* Crew.

ness, with corroborating circumstances; that is, with circumstances which would equal the evidence of another witness. But Mr. *Daniel* lays down the rule more guardedly. He says, that where the answer, in express terms, negatives the allegations in the bill, and the evidence of one person, only, affirms what has been so negatived, then the Court will neither make a decree nor send it to a trial at Law; or, as he otherwise expresses it, unless the denial, by the answer, is contradicted by the evidence of more than one witness. (1 *Ch. Pl. & Pr.* 983.) And by reference to the numerous American cases, cited in the note by Mr. *Perkins*, the Editor, it will be found, that in many of them, very slight preponderating circumstances, in addition to the positive proof, were sufficient to turn the scale against the defendant.

[8.] Indeed, circumstances alone, independent of any direct proof, might often justify and require a decree against the answer. (*Long vs. White*, 5 *J. J. Marshall*, 228. *Clark's Ex's. vs. Van Rien's Dyk.* 9 *Cranch.* 154.)

[9.] In *Pember and his Wife vs. Mathers*, decided in 1778, (1 *Brown's Ch. R.* 52,) Lord Chancellor *Thurlow*, in commenting on this rule, says : "It stands on great authorities—so does the manner of liquidating it. I do not see great reason in either. The rule is subject to this modification; that if there are circumstances sufficient to turn the scale, it ought to be turned. The oath of a by-stander, with circumstances corroborating it, is better than that of an interested person".

And in support of this qualification of the rule, see 1 *Greenleaf's Ev.* pt. 2, *ch.* 14, §260. 1 *Phil. Ev. Cowen & Hill's Edition*, 154, 155, and the numerous cases cited by Mr. *Perkins*, in note *a*, to the case of *Pember and Mathers*.

The judgment below is affirmed.