Huff v. Shepard.

JOSEPH HUFF, Respondent, *vs.* ELIHU H. SHEPARD, Appellant.

1. *Clerk of Court—Issue of process in his own behalf.*—A clerk of a court of record may issue process in his own behalf as plaintiff.

2. *Practice, civil—Application raising question of jurisdiction, no appearance.*—A rule of court which prescribes that, "application to the court to raise any jurisdictional question shall be deemed an appearance" for other purposes, is invalid. Jurisdiction over the person can only be acquired by the method which the law provides, or by consent of the party.

3. *Practice, civil—Summons—Service in wrong county—Amendment of petition.*—If a summons be served on a defendant in the wrong county, the defect cannot be remedied by filing an amended petition which, if originally filed, would have authorized the service as made.

4. *Practice, civil—Specific performance—Suit for—Final decree in counties of over 40,000 people.*—In a county not having over forty thousand inhabitants, it is erroneous to render a final decree at the return term in a suit for specific performance.

5. *Equity—Specific performance—Contract to sell lands, etc.*—An agreement for the sale of lands, in which it is stipulated that the purchase money is to be paid "on such terms as may be agreed on between said parties," cannot be enforced in equity by a decree for specific performance.

6. *Supreme Court—Equity—Dismissal.*— Cause dismissed by the Supreme Court for want of equity.

*Appeal from Iron Circuit Court.*

*Marshall & Barclay,* for Appellant.

I. One prominent clause in this contract, is this: "The balance of purchase money to be paid on such terms as may be agreed on between said parties." If defendant, though able to fulfill his contract, cannot be judicially compelled to do so, the jurisdiction of equity is at an end. (Adams' Eq., p. 81; Kemble vs. Kean, 6 Sim., 333; Wiley vs. Robert, 31 Mo., 215; Fry Spec. Perf., §§ 185, 203, 221; Milnes vs. Gery, 14 Ves., 400; S. W. R. R. Co. vs. Wythes, 5 DeG. M. & G., 888; Potts vs. Whitehead, 5 C. E. Green, [20 N. J. Chancery,] 50; Taylor vs. Portington, 7 DeG. M. & G., 328; Sto. Eq., §§ 751, 767, 736a.)

II. The court below rendered final judgment in this case at the return term, (only two days after the judgment by default). This was in defiance of the statute law, and of the

authoritative teachings of this court. (Wagn. Stat., 1039, § 5; 1014, § 5; Dougherty vs. Pres. and Faculty, &c., 53 Mo., 579.)

III. The rule of court in this case pretends to transform a limited appearance for the purpose of raising a jurisdictional point into a general appearance for all purposes. Of this we have only to say, that the law-making power of this State is not yet delegated to the Circuit Court of Iron county, by the people of Missouri, and until such is done, judicial legislation of that kind will not be sanctioned—we believe—by this court. (Wagn. Stat., 1014, § 5; 46 Mo., 110; 33 Mo., 244.)

IV. The court below should have sustained both motions to quash summons, because of the reasons therein given, that the same were issued and tested by the plaintiff in his own behalf and interest, which is repugnant to the maxims of the common law and to the independent spirit of American jurisprudence. *Nemo debet esse judex in propria causa.* (12 Coke, 114*a*; Wagn. Stat., 421, § 18; 422, § 31; Snydecker vs. Brosse, 51 Ill., 360.)

*J. P. Dillingham, with J. W. Emerson,* for Respondent.

I. The writ issued by the plaintiff, who was clerk, is not thereby invalidated. No one else was authorized to act. (Wagn. Stat., 258, § 15; 259, §§ 15, 18.) And there is no prohibition in the law against a clerk bringing suit in his court by his attorney, and issuing process thereon as in other cases.

Section 18, p. 421, (Wagn. Stat.) plainly refers only to sheriffs and other purely ministerial officers who are required "to execute process," or perform strict ministerial duties. (11 Verm., 503; 33 Mo., 216.)

II. Where a sale is made and the price fixed, but the terms of payment are to be afterwards agreed upon, and the purchaser after the sale refuses to agree upon any terms of payment, as it is admitted the defendant did in this instance, then the court will give judgment for the amount, precisely as it would do in a case where a sale was made for cash " on time,"

and no time was agreed upon. When no time is fixed for the performance of an act, the party who is to perform it is to have a reasonable time; and this is to be determined by the nature of the act, etc. (4 Mo., 522; 2 Penn., 63; 3 Bibb., 105; 2 Greenl., 249; 29 Mo., 351.)

The case in 31 Mo., 215, upon which appellant relies, is not in point. In that case the agreement was verbal, and no price was fixed. In 10 Mo., 174, it was a contract to convey such lands as the defendant might own at the end of five years in the future, and no land was described or referred to in the contract.

III. Under the general prayer for relief contained in the first petition, "for such other and further relief as plaintiff may be entitled to," it was competent for the court to grant the relief expressly prayed for in the amended petition, viz: for a vendor's lien. And final judgment was properly rendered at the return term. (Wagn. Stat., 1053, § 10.)

IV. It is purely an arbitrary construction to say that final judgment cannot be taken in such suit, when the statute says in express language "in all other cases," etc. Is there any reason that a court may give final judgment in a case of damages, trespass, libel, etc., and yet not when its equitable powers are invoked?

LEWIS, Judge, delivered the opinion of the court.

Suit was instituted to compel specific performance of a written agreement. A summons was issued which was not expressed to run in the name of the State of Mo., and afterwards another was issued in proper form. Both were served on the defendant in St. Louis county, where he resided. At the return term, defendant, appearing only for that purpose, and "not intending to confer jurisdiction of his person," moved to quash both writs, because they were issued and attested by the plaintiff himself as clerk of the Circuit Court, and the second one for the additional reason that the first had been served. These motions were overruled.

On the first day of the term, plaintiff filed an amended petition, which more particularly described the property, which was the subject matter of the agreement. On the sixth day of the term, plaintiff filed a second amended petition asking for additional relief in the enforcement of a vendor's lien on the property. On the next day, he took an interlocutory judgment by default, and two days afterwards this was ripened into a final decree against defendant, in accordance with the prayer of the petition. Defendant's motion in arrest of judgment was overruled.

The points of practice appearing herein demand some attention before we proceed to the substantial merits of the controversy. Defendant's objections against the validity of the second summons were not well taken. The first, being unquestionably void, could not affect the second, which was therefore the only original process in the suit. There is no controlling reason why a clerk should not issue process in his own behalf, as plaintiff. The statutory provision (Wagn. Stat., 421, § 18) for a substitute in certain cases, applies only to the officers who execute process. An interested sheriff, by making a false return, might subject a defendant to judgment without notice in fact of the proceedings. Or, if biased in a different direction, he could deprive a plaintiff of his rights by omitting service at the proper time. But no such dangers attend the mere issuance of the writ. The document speaks for itself, and if served by the proper officer can accomplish neither more nor less, whether issued by the clerk or a temporary substitute. The legislature would seem to have recognized these truths, in its omission of clerical officers from the general provisions.

The Circuit Court never acquired any jurisdiction over the person of the defendant, which could authorize either the interlocutory or the final judgment. The suit, as originally brought, was not for the possession of real estate, or to affect any title thereto. There was but one defendant, and he was served in another county. He was not before the court for any purpose, except that which he chose to announce in his

motion to quash the writ. It appears, however, that two ef-
forts were made to subject him to judicial authority. One
was by force of a "rule of court," to the following effect:

"Application to the court to raise any jurisdictional ques-
tion, shall be deemed an appearance, and no further process
shall be necessary to bring the party into court. But if the
process to which objection is taken be defective, the party so
applying may have a continuance, or time to answer, as to the
court may seem just and equitable."

Unless it can be shown that the court had a legislative au-
thority, this "rule" was void. Jurisdiction over a person
can never be acquired, unless by a method which the law
specifically provides, or by consent of the party himself. If
the legal method has not been employed, and the party ex-
pressly refuses his consent, an assumption of jurisdiction by
the court will be purely arbitrary. This so called rule not
merely overrules—it undertakes to repeal the law as declared
in numerous decisions rendered by this court. (Smith vs.
Rollins, 25 Mo., 408.) The other effort was not less curious.

Until the eighth day of the term the action was a personal
one only. The writ having been, for such a proceeding,
served in the wrong county, there was in effect no service at
all. An amended petition was then filed, which converted
the personal into a real action ; the effect whereof is claimed
(by relation presumably) to make the service appear sufficient
from the beginning. This, at least, is the logic of the posi-
tions taken here. Such devices, if sanctioned, would make
our jurisprudence a mockery.

Even if the defendant were properly before the court for
every purpose, there was no lawful authority for the final decree
rendered at the return term. "Every suit that shall not be
otherwise disposed of according to law, shall be continued at
the term at which the defendant is bound to appear, until
the next term thereafter, and at such second term every such
suit shall be determined." (Wagn. Stat., 1039, § 5.) This suit
not being in a county having over forty thousand inhabitants,
nor founded on a bond, bill or note for the direct payment of

money or property, (Wagn. Stat., 1014, § 5) nor yet upon a judgment of any court of record or an open account, (Wagn. Stat., 1053, §§ 9, 10)—either of which events would have permitted it to be "otherwise disposed of"—the provision just quoted controlled it. (Dougherty vs. President, etc., 53 Mo., 579.)

We come now to consider the cause of action. The agreement which the court was asked to enforce, appears in the following words:

"Know all men by these presents, that we, Joseph Huff and Elihu H. Shepard, have this day agreed as follows, to-wit: The said Joseph Huff has bargained and sold unto the said Elihu H. Shepard, all his real estate in Ironton, Mo., situate east of the Presbyterian Church, including all the personal property and household furniture thereto belonging, excepting, however, the family clothing, books, papers, etc., which are strictly private, and one sewing machine, at and for the sum of twenty-five hundred dollars; the said Shepard to assume the amount owing to Iron county school fund, by the said Joseph Huff, and the balance of purchase money to be paid *on such terms as may be agreed on between said parties.* Given under our hands, etc."

The Circuit Court undertook to compel performance of the final clause in this agreement, by rendering a judgment against the defendant for $1,300 and interest. This was not enforcing the defendant's contract; for he never bound himself to any such cash liquidation without regard to time. It was enforcing a new agreement, made for him by the court and the plaintiff. So far as the defendant had bound himself at all, it was upon an express stipulation that the terms of payment should be only such as he might thereafter consent to in a further agreement. Time—being included in the terms—thus became of the essence of the contract.

Such an undertaking to settle terms at a future day, is beyond the reach of any decree for specific performance. The court cannot compel parties to agree. The remedy attempted would destroy the subject of treatment. In Kemble vs. Kean,

(6 Sim., 333) the Vice Chancellor said : " Can a man be compelled to act at a theater by this court sending him to the fleet, where he cannot act at all ?"   So, in this proposition to compel a person to agree, the element of compulsion would annihilate in advance the thing it promised to create.   For no contract can live in the law's atmosphere, unless born of voluntary choice in the parties.

The judgment must be reversed ; and this court proceeding to make the only disposition of the subject which could be proper in the court below, dismisses the case.   The other judges concur.