18635. RUSH *v.* AUTRY *et al.*
18636. J. L. TODD AUCTION CO. *v.* AUTRY *et al.*

HAWKINS, Justice. 1. Paragraph 12 of the petition as amended sought to charge the defendants with fraud, in that it alleged that at the time of the auction and sale the auctioneer was selling tracts and parcels of the defendant Rush's land at certain prices per acre; that all of the several sales had auctioned off 40-acre tracts which had been selling for the approximate price of $1,500 per tract or parcel of land; that the auctioneer placed at auction the tract or parcel of land claimed to have been purchased by the plaintiff without informing him or the persons in attendance that this tract or parcel of land contained more than 40 acres, and proceeded to auction the same off by the acre, and plaintiff bid on the same by the acre; that after the auction was completed, and after the auctioneer's memorandum to authenticate the sale was executed and after plaintiff had paid the sum of $6,000, the defendant auctioneer informed plaintiff that he had bid upon approximately 300 acres of land, rather than 40 acres, and both defendants still insist that the plaintiff purchased 300 acres of land; that this information was withheld from him until after the payment of $6,000 of the purchase price and the

signing of the memorandum; that such conduct on the part of the auctioneer, participated in by the defendant Rush, constituted a fraud upon the plaintiff, and plaintiff seeks a decree from the court that the transaction is unenforceable against him. *Held:*

(a) Such allegations are insufficient to charge any fraud. The very terms of the instrument signed by the plaintiff refute the allegation that he did not know the amount of land bid in by him until after he had paid a part of the purchase price and signed the instrument. The instrument itself purports to obligate him to pay $37,196; he paid in cash $6,000, and could not, in the light of these facts, have thought he was only buying 40 acres at a value of about $1,500. *Eliopolo* v. *Eicholz,* 161 *Ga.* 823 (131 S. E. 889). It appears from the petition that the sale took place on the premises. It is not alleged that the defendants made any misrepresentations as to the amount or character of land offered for sale, but only that they failed to inform the plaintiff as to the number of acres included therein. In *Elliott* v. *Dolvin,* 34 *Ga. App.* 788 (131 S. E. 300), it is held that, where one purchasing real estate has the opportunity, as the plaintiff here did, of examining it before buying; but, instead of doing so, he voluntarily relies upon the statements of the vendor concerning the character and value, the contract will not be rescinded or set aside, or the purchase price of the land abated, because of the falsity of such statements, unless some fraud or artifice was practiced by the vendor to prevent such examination; and that this is true even though the vendee in buying the land may have acted upon the misrepresentations of the vendor or his agents. See also *Stone* v. *Moore,* 75 *Ga.* 565; *Grant* v. *Maxwell,* 160 *Ga.* 612 (128 S. E. 803); *Brim* v. *Couch,* 184 *Ga.* 310 (191 S. E. 94); *Karpas* v. *Candler,* 189 *Ga.* 711 (2) (7 S. E. 2d 243). The trial court erred in overruling the demurrers to paragraph 12 of the petition as amended.

2. While the petition refers to the instrument here involved as both an auctioneer's memorandum and a sales contract, it is not an auctioneer's memorandum such as is contemplated by Code § 96-114, for it is not signed by the auctioneer, but it purports to be a contract for the sale of land entered into between and signed by both the seller and the purchaser. Whether it be one or the other, it falls within the statute of frauds which requires that all contracts for the sale of land shall be in writing. Code § 20-401; *White* v. *Crew,* 16 *Ga.* 416 (3); *Seymour* v. *Nat. Bldg. & Loan Assn. of Montgomery,* 116 *Ga.* 285 (42 S. E. 518, 94 Am. St. R. 131); *Pierce* v. *Rush,* ante, p. 718. In order to be sufficient to satisfy the statute, the writing must cover the entire contract. *Lester* v. *Heidt,* 86 *Ga.* 226 (12 S. E. 214, 10 L. R. A. 108); *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30).

3. While the contract here involved disclosed the purchase price and the amount of the cash payment, its provisions, "Balance on terms: $31,196 payable as follows: Bal. to be agreed on by Mr. Rush and Mr. Autry," are so indefinite, vague, and uncertain as to render the contract invalid and unenforceable. *Lester* v. *Heidt,* supra; *Crawford* v. *Williford,* 145 *Ga.* 550 (89 S. E. 488); *Trust Co. of Ga.* v. *Neal,* 161 *Ga.* 965 (132 S. E. 385). And payment of part of the purchase money is not alone sufficient part performance as will take the case out of the statute of

frauds. *Rhyne* v. *Mayhugh,* 156 *Ga.* 243 (119 S. E. 522); *Harris* v. *Underwood,* 208 *Ga.* 247 (66 S. E. 2d 332); *Pierce* v. *Rush,* supra.

4. Where, as here, the amount of the purchase price of the property and the cash payment as fixed by the contract are certain and definite, but the terms of the payment of the balance of the purchase price are indefinite and uncertain, the writing is not a contract, and imposed no rights or liability; and the defendant Rush, to whom the cash payment was made, has no legal right to retain it, and an action for money had and received may be maintained by the owner of the money against the one to whom it was paid. *Lightfoot* v. *King,* 25 *Ga. App.* 80 (102 S. E. 468). While it was held in the *Lightfoot* case that, where money is paid to an agent and is retained by him, the owner of the money may, at his option, and before settlement is made by the agent with his principal, maintain an action against either the agent or the principal, or both, no such state of facts exists in the instant case, for the money was paid to the principal, and not to the agent. The mere fact that the principal paid a portion of the money to the agent for service rendered to the principal by the agent would not authorize the plaintiff to proceed against the agent. *Home Realty Corp.* v. *Morrow,* 27 *Ga. App.* 385 (108 S. E. 481); *Graves* v. *Carter,* 208 *Ga.* 5 (2) (64 S. E. 2d 450). The petition failed to allege insolvency on the part of the principal, fraud, or any other fact which would authorize a court of equity to trace the funds so paid to the principal into the hands of an agent, and a recovery by the owner against the agent.

5. While the plaintiff's petition failed to state a cause of action for any equitable relief, under the foregoing rules it does state a cause of action for money had and received against the defendant Rush, and the trial court did not err in overruling that defendant's general demurrer to the petition (*Lucas* v. *Neidlinger,* 210 *Ga.* 557 (5), 81 S. E. 2d 825), but did err in overruling the general demurrer of the defendant J. L. Todd Auction Company.

*Judgment affirmed in part and reversed in part in case No. 18635; judgment reversed in case No. 18636. All the Justices concur.*

SUBMITTED JUNE 16, 1954—DECIDED JULY 13, 1954—
REHEARING DENIED (No. 18635), JULY 27, 1954.

*Matthews, Maddox, Walton & Smith,* for J. J. Rush.

*Parker, Clary & Kent, J. M. Grubbs, Jr.,* for C. T. Autry.

*Clinton J. Morgan, Andrews & Covington,* for J. L. Todd Auction Co.

C. T. Autry filed his petition in Floyd Superior Court against J. J. Rush and J. L. Todd Auction Company, the latter being a partnership composed of two named persons, to recover $6,000, which the plaintiff paid to the defendant Rush as part payment of the purchase price of certain real estate which the defendant auction company, as agent for the defendant Rush, had offered

for sale at public auction on the premises, and as to which the plaintiff had been the high bidder. The petition alleged that the plaintiff signed an instrument, which is referred to in the petition as an auctioneer's memorandum and as a sales contract, a copy of which is attached to the petition as Exhibit "A", and had paid as part payment $6,000 in the form of a check in favor of the defendant Rush, which he had endorsed and received payment thereon, and a portion of which sum the defendant Rush had paid to the defendant auction company for its service in the transaction. The instrument attached to the plaintiff's petition as Exhibit "A" is as follows:

"J. L. Todd Auction Company,
Selling Agents Only

Phone 4-1656 302 West 3rd St., Rome, Ga.

Ga.　State　　　　　Floyd County　　　　11/20, 1953

The undersigned buyer at auction agrees to buy the following property:

Now owned by: J. J. Rush—Known as Chulio Race Track Property. Town or City_____ State_____ County_____
Detailed Description (Include Land Lot, District and Section, measurements, acreage for City Property: Subdivision name and Lot No.　Street and No.)

Tracts 16 through 20 & 36 through 43 as per Plat of Chulio Race Track property in 22nd Dist., 3rd Section, Floyd County, Ga.

The sale is made upon the following terms, payable as follows;

Purchase Price: $37,196.00
Cash: $ 6,000.00
Balance on terms: $31,196.00 payable as follows:
Bal. to be agreed on by Mr. Rush & Mr. Autry.

In witness whereof the buyer has hereunto affixed his hand and seal.

Witness: G. C. Walters, Jr.　　Buyer　X　C. T. Autry (L.S.)

The above offer is accepted and I agree to furnish good and marketable title with such legal conveyance as necessary to complete the sale.

This 20 day of November, 1953.

Witness: G. C. Walters, Jr.　　　Seller: J. J. Rush (L.S.)"

The petition alleged that this "instrument to authenticate the sale, or memorandum of auctioneer," is void and falls within

the operation of the statute of frauds as set forth in Code § 20-401 for the following reasons: (a) that the transaction was an auction, which falls within the operation of the said statute; (b) that the transaction was a contract for the sale of land, which was required to be in writing, as set forth under subparagraph 4 of said statute; (c) that the instrument is insufficient and defective in that it does not contain a sufficient description of the land sold, and it does not identify the property; (d) that said contract is too vague, ambiguous, and not of sufficient clarity to be of legal force; and (e) said memorandum is insufficient in that it refers in its body to additional terms to be agreed upon between the contracting parties, these terms not being evidenced by writing. The petition alleged that the plaintiff disaffirmed the said transaction; that he had demanded that the defendants return to him the $6,000 paid as part payment of the purchase price; that they had refused to do so, and he prayed: (a) for process; (b) for judgment against the defendants in the amount of $6,000, besides the cost of the suit; and (c) that the plaintiff have such other and further relief as to the court might seem just and proper.

To this petition the defendants filed their separate general and special demurrers. The plaintiff thereafter twice amended his petition by alleging that the defendant Rush had paid to the defendant auction company $2,889.70, as its commission for having conducted said sale and public auction, which was a part of the $6,000 that had been paid to the defendant Rush by the plaintiff; that the defendant auction company still retains this sum from the proceeds of said check and refuses to return the same to plaintiff; that the terminology in Exhibit "A", "Bal. to be agreed upon by Mr. Rush and Mr. Autry," refers to additional material terms concerning the said transaction which are not evidenced by writing; and that the plaintiff is unable to determine what the additional terms are because of their vagueness and insufficiency, or how or in what manner said balance was to be arranged; and in the first amendment he added additional prayers that a court of equity trace the sum of $2,889.70 into the hands and possession of the defendant auction company and hold it liable therefor to the plaintiff; and that the court enter a decree declaring the said auction and sale unenforceable against the plaintiff, because of the fraud and misrepresentation

practiced on the plaintiff by the defendants; and the plaintiff further amended the petition by adding the additional prayer: "That your plaintiff have and recover judgment against defendant J. J. Rush in the amount of $3,110.30 and against defendant J. L. Todd Auction Company in the amount of $2,889.70 and that the court enter a decree declaring that said contract or instrument . . . is within the statute of frauds and void because of its vagueness, uncertainty and insufficiency." To the petition as thus amended each of the defendants renewed their respective general and special demurrers and to the judgment overruling these demurrers, with the exception of one paragraph thereof, the defendant Rush excepts in case No. 18635, and the defendant J. L. Todd Auction Company excepts in case No. 18636. Since both cases deal with the same transaction they will be considered together.