423 P.2d 491

Marcell PITCHER, Plaintiff and Respondent,

v.

C. W. LAURITZEN, Defendant and Appellant.

No. 10563.

Supreme Court of Utah.

Feb. 7, 1967.

---

E. J. Skeen, Salt Lake City, for appellant.

Harris & Harris, Logan, for respondent.

ELLETT, Justice.

Between April 16 and 20, 1962, the plaintiff as seller and the defendant as purchaser signed an earnest money receipt and offer to purchase, containing, among other things, the following language:

> The total purchase price of $100,000.00 shall be payable as follows: $100.00 which represents the aforedescribed deposit, receipt of which is hereby acknowledged by you: on delivery of deed or final contract of sale which shall be on or before May 1, 1962, and balance of purchase price to be paid as follows: 30 acres in North Logan as indicated by map valued at $50,000.00, $25,000.00 cash from loan on seller's farm and seller to carry balance on contract or second mortgage at 5% interest. * * * All other taxes and all assessments, mortgages, chattel liens and other liens, encumbrances or charges against the property of any nature shall be paid by the seller except * * * *none*. (Emphasis added.)

There was no map in existence at the time the parties signed the agreement. At least it was not shown to the plaintiff if any there was. The defendant had given to the real estate salesman with whom plaintiff had his land listed for sale a rough sketch showing where a tract of land containing 189 acres of land lay out of which the 30 acres were to be taken. This sketch was not shown to the plaintiff either.

The plaintiff already had a mortgage of $23,000.00 on his land, and the title to one of the tracts being sold was in escrow and would be his when he paid some $6,000.-00 balance due on it.

No transfer of possession was ever made as to either tract of land, and the plaintiff lost his enthusiasm for the deal when he learned that he could not sell the North

Logan property for anything near $50,000.00 nor mortgage his own land for more than $12,600.00.

The parties never talked to each other about the deal prior to the signing of the purported agreement, and it was the real estate salesman who secured the signatures of each party. It is quite apparent from reading the record that the plaintiff wanted and needed money and that defendant wanted and needed hay for his dairy operation. Numerous efforts on the part of the real estate salesman to get the parties together proved fruitless.

The real estate salesman was instrumental in causing the defendant to go to the plaintiff's land and get about $3500.00 worth of hay and straw during the late summer and fall of 1962. The plaintiff says it was a sale, while the defendant claims that he took the hay and straw as a matter of right by reason of the earnest money agreement which the parties had signed.

No payment was ever made for the hay or straw, and in March of 1964 plaintiff sued the defendant for the value thereof. The defendant apparently thinking his best defense was a vigorous offense counterclaimed for specific performance of the signed document entitled "Earnest Money Agreement and Offer to Purchase" above referred to.

A trial was had partly to the court and partly to a jury. The jury found by a special verdict the value of the hay and straw, which defendant admits to be sustained by the evidence. The jury also found that neither party had repudiated the earnest money agreement and offer to purchase. The court found the agreement to be valid and binding at its inception but that it had been abandoned by the parties.

The finding of the court is not in conflict with the finding of the jury. *Repudiation* is the refusal to perform a *duty* or *obligation* owed to the other party, while *abandonment* is the giving up of the *right to a benefit* due from another.

By his finding of abandonment the court disposed of the issues raised by the defendant on his counterclaim for specific performance.

It will be noted that nothing was done by either party prior to May 12, 1962, the date when a *final contract* was to be entered into, and no final contract was ever entered into by the parties. The trial court found under disputed competent evidence that the parties had mutually abandoned the contract; and when there is competent evidence to support such a finding, we are not permitted to substitute our judgment for that of the trial court even if we should disagree with his finding.

But even if there had been no finding of mutual abandonment, there were ample rea-

sons why specific performance should not have been required of the plaintiff.

Specific performance cannot be required unless all terms of the agreement are clear. The court cannot compel the performance of a contract which the parties did not mutually agree upon. See Bowman v. Rayburn, 115 Colo. 82, 170 P.2d 271.

In speaking of certain terms required for specific performance, the author in 49 Am.Jur., Specific Performance, Section 22, at page 35 uses this language:

The contract must be free from doubt, vagueness, and ambiguity, so as to leave nothing to conjecture or to be supplied by the court. It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. A greater degree of certainty is required for specific performance in equity than is necessary to establish a contract as the basis of an action at law for damages.

We think the earnest money receipt and offer to purchase lacks certainty in two respects, either of which would prevent the court from granting specific performance: First, it was not certain which 30 acres out of the 189 acres owned by the defendant were to be conveyed to plaintiff. The document says, "as indicated by map," but no map was ever shown to the plaintiff. Second, the final balance of $25,000.00 was to be carried by the seller on *contract* or *second mortgage*. Which would the court require? A mortgage was already on the plaintiff's land. He was to get another loan on the land. Does that become the second mortgage? If second mortgage means third mortgage, what are the terms: 10 years, 15 years, or 5 years? How are the payments to be made: annually, semiannually, or lump sum at the end of the term? How was interest to be paid: annually, semiannually, or monthly? Should the court require a contract for $25,000.00 balance instead of the mortgage, and if so, would not the same problems arise as to its terms as are indicated above for those of the mortgage?

Since plaintiff needed money and believed defendant's North Logan land could be sold promptly for cash, the court could consider the hardship which might ensue in determining what to do, and it does not matter that the defendant was not the one who made plaintiff believe the land would sell for $50,000.00. The court could consider the fact that only $12,600.00 could be borrowed on the plaintiff's land instead of the expected $25,000.00 in making his ruling regarding specific performance.

But what about the hay and straw? The findings of the court do not tell us

when the parties abandoned the purported agreement. If we assume the hay and straw were taken before the final abandonment, would the defendant then have to pay for it?

 Where a contract is silent as to when possession of land is to be given to a purchaser, the seller should have that possession as a means of compelling performance on the part of the purchaser. Until payment is made, or if terms are given by a contract, until compliance therewith so as to entitle the purchaser to the possession of the land, the purchaser would not be entitled to the possession nor to the crops growing thereon, and especially is this so where he has not contributed to the cultivation and harvesting of such crops.

In the Idaho case of Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83, it is said at page 85:

The general rule is, subject to exceptions not herein necessary to discuss, that if there is no agreement, expressed or implied, in a contract for the sale of real estate, the purchaser is not entitled to possession until the full payment of the purchase price has been made, and if the purchaser complies * * * and receives the deed to the premises, he is then, and not until then, entitled to possession of the property sold.

In 55 Am.Jur., Vendor and Purchaser, Section 385, at page 808, the following statement is made:

While the vendee under such a contract is considered to be the equitable owner, the legal title is in the vendor until the contract is performed and a conveyance executed, and many cases support the general rule that the right to possession follows the legal title; that if there is no agreement, express or implied, in a contract for the sale of real estate, that the vendor shall deliver possession of the premises before the full payment of the purchase price, the purchaser is not entitled to the possession; and that a mere contract for the sale of real estate which provides that if the purchaser complies with his part of the contract and pays the purchase price as agreed, the vendor will then deed the property, raises no legal inference that possession of the property is to be given before the deed is to be executed.

A specific statement is made relative to growing crops in 15 Am.Jur., Crops, Section 11, at page 202:

The general rule that growing crops pass with a transfer of the title to the land ordinarily applies where the title to the land is transferred by virtue of a contract of sale. Thus, on the theory that equity treats things agreed to be done as actually performed, when real estate is agreed to be conveyed by a valid contract of sale, without reservation, and the vendee has the right to possession, the equitable title passes at once to the vendee and with it title to all crops

growing on the land. If, however, the purchaser is given no right to the possession until the time for conveyance arrives, he acquires no interest in the growing crops which mature and are harvested before the time for the conveyance and his right to possession arrives.

█ It would seem that the court was amply justified in rendering judgment against the defendant for the value of the hay and the straw and in refusing to order the plaintiff to specifically perform the contract. (See Valcarce v. Bitters, 12 Utah 2d 61, 362 P.2d 427.)

The judgment is affirmed with costs to the plaintiff.

CROCKETT, C. J., and CALLISTER, TUCKETT, and HENRIOD, JJ., concur.