478 P.2d 327

James KIER, Plaintiff and Respondent,

v.

Andrew O. CONDRACK and Delma M. Con-
drack, his wife, Defendants
and Appellants.

No. 11994.

Supreme Court of Utah.

Dec. 8, 1970.

Henriod, J., concurred in the result and
filed an opinion.

Ellett and Callister, JJ., dissented and
filed opinion.

Alsup & Stark, LaVar E. Stark, Ogden, for appellants.

McKay & Burton, Wilford M. Burton, Alan D. Frandsen, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

Plaintiff James Kier sued for specific performance of a contract to purchase the home property of the defendants Condrack at about 4900 South on the west side of Washington Boulevard in Ogden, Utah. The defense relied upon at the trial, and persisted in on this appeal, is that the option was unenforceable because it was (a) given without consideration, (b) not properly exercised, and (c) not definite as to terms. Upon a plenary trial, the district

court found the issues in favor of the plaintiff and ordered the defendants to convey him the property upon the payment of the price ($23,500) stated in the contract, less some deductions not material to the issues raised here.

Although this court may review the facts in this case in equity, it should be kept in mind that we may do so in the light of the evidence as believed by the trial court, and not necessarily as urged upon us from the point of view of the defendants.[1]

Plaintiff Kier is a contractor who desired to build apartments in the area of defendants' property. In December of 1967 the parties entered into a contract whereby he purchased the west 120 feet of the Condracks' property for the sum of $3,000. In connection therewith the parties discussed the sale of the remainder of the defendants' property, which would include their home and involve considerable more money. The plaintiff was hesitant, stating that he "did not want to bite off more than he could chew," but asked if they would give him an option, which they agreed to do. The parties simply dispute each other as to whether the transaction was so integrated that the entering into the mutual obligations of the contract and the payment of the $3,000 for the west tract was also consideration for the option on the east tract.

For the purpose of analyzing defendant's first contention, that no consideration was given for the option, we assume for the moment the correctness of their contention that the contract is uncertain. The trial court could then look to the circumstances and the testimony of the parties to ascertain what appeared to be their intent and determine their obligations based thereon.[2] In addition to their own testimony, the strongest point in defendants' favor on this first contention is that the plaintiff acknowledged on cross-examination that the price for the west tract was $3,000 and that he would have bought it for that price alone. Nevertheless, he insisted that in connection with the purchase of the west tract, the parties discussed his desire to buy, and the defendants' willingness to sell, the east tract; and that the whole deal including the option thereon was regarded by the parties as one transaction for which the signing of the contract and the payment of the $3,000 was consideration.

This finds corroboration in the further fact of significance here: that the transaction was all included in the *one contract*, which recited the mutual promises the

---

1. Utah Const. Art. VIII, Sec. 9, providing for appeals " *  *  * in equity cases the appeal may be on questions of law and fact. *  *  *" See Nokes v. Continental Mining & Milling Co., 6 Utah 2d 177, 308 P.2d 954.

2. See Continental Bank & Trust Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773, and authorities therein cited.

parties made to each other, and which contains this provision:

> Sellers grant to Buyer the option to purchase the balance of sellers' property, 85 feet by 150 feet approximately, contiguous to the above land for the sum of $23,500.00 on payment and terms to be negotiated provided the same is exercised by June 1, 1968.

For the reasons stated above we do not see anything unreasonable about the trial court's conclusion that there was consideration for the option.

■ On May 15, 1968 (thus 15 days prior to the expiration of the option), plaintiff Kier sent a registered letter to the defendants stating, "Please be advised that the undersigned exercises said option." Plaintiff offered to pay the defendants what would amount to a "cash-out" of their equity, by paying them $5,302.37 in cash, plus assuming the balance on two mortgages on the property, which would aggregate the $23,500. The defendants indicated no willingness to accept this proposal. They contend that the letter was not an exercise of the option, but rather a counter-offer because plaintiff therein proposed a method of payment of the purchase price. This is not necessarily so. The agreement stated that the payment was to be made "upon terms to be agreed upon." There was nothing wrong in plaintiff suggesting a method of payment. The letter was unequivocal in stating that the plaintiff exercised the option, and it did not condition the exercise of the option upon the acceptance of the terms proposed by the plaintiff. On or about May 31, the parties met to discuss the matter. The defendants themselves made several proposals. The basis of each was that they would retain title for a period of 12 to 24 months, with payments of installments plus interest; or they would accept the "cash-out" for their equity as proposed by the plaintiff, but on the condition that they could continue to occupy their home for 24 months with free rental. Plaintiff refused these offers on the ground that they would impede his development plans and/or would compel him to pay more than the $23,500 which the defendants had agreed to take for the property.

■■ We recognize the validity of the rule relied upon by the defendants that to be enforceable a contract must be sufficiently definite in its terms that the parties know what is required of them.[3] But like all rules, which are necessarily stated in generality, it is only applicable in the proper circumstances, where the justice of the case requires: as a shield to protect a party from an injustice, and not as a weapon with which to perpetrate an injustice. Under the evidence and the particular facts of this

---

3. See Pitcher v. Lauritzen, 18 Utah 2d 368, 423 P.2d 491; and Cf. Ansorge v. Kane, 244 N.Y. 395, 155 N.E. 683.

case, we are not convinced that we should disagree with the view of this matter which it is apparent was taken by the trial court: when the parties had reached agreement and committed themselves on the major aspects of the transaction, that is, that the defendants would sell and the plaintiff would buy at the agreed price of $23,500, if the plaintiff exercised the option within the time specified, reserving only the "terms" of payment, they should be obliged to act in good faith in keeping their promises.[4] It would seem inequitable and unjust to permit a seller to simply refuse unreasoningly to perform and seek specious excuses in an attempt to justify his refusal. The reference to terms of payment could well be regarded in this particular situation as incidental details, to be handled in a manner agreeable to the parties, to give the buyer a reasonable opportunity to obtain the money, and to assure the sellers they would get the amount of money promised. But neither party should be permitted to use the reservation of "terms" to get more than they had promised: the plaintiff to get more land, or the defendants to get more money, nor either to renege on the bargain, as it appears that the trial court believes was done here.

The plaintiff testified that the defendants had later told him that they just didn't want to sell. "he [Mr. Condrack] told me that his wife just wasn't interested in selling the house. * * *"

Mr. Condrack himself testified:

We were concerned at that time. We had one boy on a mission and we were planning on another boy going on a mission and we were trying to make sure that we had a home for them to come home to.

and further:

Q. Will you take $23,500.00 cash?

A. No, sir.

Q. Will you take $23,500.00 on a contract of sale that gives Kier the option to prepay it at any time without penalty?

A. No, sir.

Q. What penalty do you want to exact from Mr. Kier?

A. No penalty.

Q. What is it you want in addition, Mr. Condrack?

A. All I want is a monthly payment. *This can be taken over twenty years.*

Q. You want him to pay?

A. Under this condition we will give possession within 90 days.

Q. Give us title?

---

4. See Morris v. Ballard, 56 App.D.C. 383, 16 F.2d 175, 49 A.L.R. 1461; Volk v. Atlantic Acceptance & Realty Co., 139 N.J.Eq. 171, 50 A.2d 488, 68 A.L.R.2d 1230.

A.  No, sir; we will hold title.

and Mrs. Condrack testified:

A.  At the time we just sent our boy on a mission and I had my girl to finish high school and, well, she is kind of funny, she does not like to be torn up over night, you know.

■ · We do not overlook the possibility that there may be some situations where an extended installment contract might be something particularly desired by the seller, nor that if such appears to be the case, his interests should be properly safeguarded. However, in this instance there was nothing in the negotiations nor in the contract to suggest that that factor was to be considered in this transaction until after the defendants had changed their minds.  In the absence of any such indication, it seems a fair assumption that the plaintiff's offer to pay the sellers the "cash-out" of their interest in the property would have satisfied any reasonable person who was willing to fulfill his commitment.  Moreover, when the plaintiff offered to pay the entire purchase price in cash, that is, to pay off the defendants' equity, and to pay off the mortgages, and the defendants refused, making the statement that "This can be taken over twenty years," the trial court was justified in believing that the defendants were not acting in good faith but were simply offering excuses to justify their refusal to honor the plaintiff's exercise of the option because they had changed their minds about their agreement.  It was therefore within his prerogative as a court of equity to decree what equity and good conscience required: the specific performance of the contract.

Affirmed.  Costs to plaintiff (respondent).

TUCKETT, J., concurs.

HENRIOD, Justice (concurring in the result).

I concur in the result.

It is obvious from the record that defendants had changed their minds between the time they signed the uniform real estate contract to sell part of the tract, and the time plaintiff exercised the option.  It is significant that the option here was not quite the conventional one ordinarily used.  It was incorporated in the contract that sold part of the property, and after considerable discussion wherein defendants appeared to be agreeable to a $23,500 sale for the other part of the property, crystallized then and there, except that the plaintiff felt and said at that time that he did not desire to bite off more than he could chew.  I think the evidence reasonably was convincing that had the plaintiff had $23,500 at that time there would have been a ready deal and no appeal to this court.  It is also significant that in the very contract containing the

option, the portion of the tract sold was on a monthly 2½-year payment plan, *without interest*. It would seem clear, therefore, that the defendants were not so interested in interest at that time as the author of the dissent is now in their behalf. The monologue about interest in the dissent is but academic and bookkeepish, since, under the decree of the lower court, with which plaintiff is willing to comply, defendants would get $23,500, which, if put out at the dissent's going rate of 8%, could be invested with an 8% profit on the defendants' equity in the property, a 2¾% profit on one of the mortgages and 2% profit on the other, about which the dissent dwells so considerably.

The defendants did not take any position to the effect that the option provision was void for uncertainty or for any other reason, since they indulged in negotiations with plaintiff in extenso, ad absurdum, when they unreasonably demanded the $23,500, to which they had agreed, plus two years occupancy obviously worth at least $4,000, plus the use of the $23,500 for two years, interest free, which according to the dissent's 8% going rate, would amount to about another $4,000,—which obviously is tantamount to an increase in the purchase price of $8,000,—which obviously is a 34% increase,—which obviously is a ridiculous, unreasonable and unthinkable demand under the guise of an effort at negotiation.

I have no quarrel with the general principles and authorities cited in the dissent, —only in their applicability here, both on principle and factual differences.

If equity cannot step into a case with circumstances like those existing here, then a plague on the institution of equity whose professed purpose is to carry out the intentions of the parties, which are unavailable in the ordinary court of law.

I think that Pitcher v. Lauritzen correctly stated the law,—or the equity, if you please,—in specific performance situations, but I do not think that it is apropos under the circumstances of this case. I should prefer to look at the instant case in the light of the pronouncements of McNeil v. McNeil, 61 Utah 141, 211 P. 988 (1922); Johnson v. Jones, 109 Utah 92, 93, 164 P.2d 893 (1946); and Colmenero v. Babers, 80 Ariz. 339, 297 P.2d 927 (1956), which see.

ELLETT, Justice (dissenting).

I dissent.

The option provided that the payment was to be on terms to be negotiated. This is an agreement to agree and hence is no contract at all.

The case of Monahan v. Allen,[1] is a case similar to the instant one. The court there said:

> * * * Paraphrased, Allen's offer is this: "I will sell you my ranch [de-

1. 47 Mont. 75, 130 P. 768 (1913).

scribing it] for $43,800, payable $5,000 upon the execution of the deed, and $38,-800 upon such terms and subject to such agreements as we may hereafter make. * * * " Such an offer is too vague, indefinite, and uncertain to form the basis for a contract.

This is clearly a case where terms were to be negotiated.

Another case to be noted is that of Howard v. Beavers,[2] wherein Howard sought specific performance of a purported contract. The parties had agreed that Howard's property was worth $14,800 more than that of Beavers. The agreement contained the following clause:

* * * and the said party of the first part will grant, bargain, sell, and convey back unto the party of the second part a mortgage on the property hereinabove described as the East 120 acres * * * for $14,800, being the balance due to and owed to the party of the second part as consideration for the within exchange of property, being the difference in the values of the properties * * *.

Howard being ready, willing and able to consummate the deal, offered to do so and submitted his abstract of title for examination. Beavers refused and Howard began an action for specific performance of the contract. The Colorado Supreme Court affirmed the trial court's judgment refusing specific performance and in doing so said:

* * * If there had been a mortgage prepared according to the terms of the contract, then it would have been a document silent as to the time and terms of payment, therefore there was nothing to this contract that could be carried into a mortgage as, if, and when it might have been given. The trial court could not write a new contract for the parties, because the minds of the parties did not meet on this essential matter, and therefore the contract was incomplete and unenforceable in an action of specific performance. The trial court here could not determine by the contract what was to be done to constitute performance. The precise act that the court would say must be specifically performed does not appear in this contract. We then must say that since a clear degree of certainty is required for specific performance, clearer than is necessary to establish a contract as a basis of an action at law for damages, that the court here committed no error, nor abuse of discretion in denying specific performance and in granting such damages as the evidence would warrant. "A reservation to either party to a contract, of an unlimited right to determine the nature and extent of his performance, renders his obligation too in-

2. 128 Colo. 541, 264 P.2d 858 (1953).

definite for legal enforcement. * * *"
12 Am.Jur. p. 558, § 66.

In Huff v. Shepard,[3] there was an agreement for the sale of real and personal property for a specified amount of money, the balance of the purchase money to be paid on such terms as should be agreed upon. On Appeal from a suit granting specific performance the Missouri Supreme Court said:

> The circuit court undertook to compel performance of the final clause in this agreement, by rendering a judgment against the defendant for $1,300 and interest. This was not enforcing the defendant's contract; for he never bound himself to any such cash liquidation without regard to time. It was enforcing a new agreement, made for him by the court and the plaintiff. So far as as the defendant had bound himself at all, it was upon an express stipulation that the terms of payment should be only such as he might thereafter consent to in a further agreement. * * *

Specific performance was denied in Rush v. Autry.[4] There the contract provided for the total purchase price and the amount to be paid down. It then provided that the balance of $31,196 was "to be agreed on by" the parties. The Georgia Supreme Court held the alleged contract to be unenforceable.

An agreement for a warranty deed, which, after making provision for price and other matters, stated that the balance was to be "payable by future agreement" on or before a certain date was held in Bentzen v. H. N. Ranch, Inc.,[5] not to give rise to an enforceable contract.

In Avalon Products v. Lentini,[6] the price was agreed upon as was the amount of the down payment. The purported agreement then provided "method of payment to be agreed upon before delivery." It was held that there was no contract at all. The court said:

> * * * An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement until the terms of that agreement are settled. Mecham on Sales, Vol. I, sec. 234; Monahan v. Allen, 47 Mont. 75, 80, 130 P. 768. Although a greater degree of certainty is required in a contract which is sought to be specifically enforced, the general rule is that a provision in a contract which leaves open the terms of payment for future negotiation renders the contract incomplete and uncertain in one of its material features and for that reason unenforceable in equity. Morris v. Ballard, 56 App. D.C. 383, 16 F.2d 175, 49 A.L.R. 1464

3. 58 Mo. 242 (1874).
4. 210 Ga. 732, 82 S.E.2d 866 (1954).

5. 78 Wyo. 158, 320 P.2d 440 (1958).
6. 98 Cal.App.2d 177, 219 P.2d 485 (1950).

and cases cited. In California the rule is the same and no action will lie to enforce the performance of a contract or to recover damages for its breach unless it is complete and certain.

In Bryant v. Clark,[7] the contract provided for the payment of the deferred balance in 15 annual installments with interest at 6% thereon. There was no provision as to when or how the interest was to be paid. The Texas Supreme Court affirmed the lower court's ruling that specific performance would not lit. It said the time of paying interest was a material term of the purported contract, but was not agreed upon by the parties.

Roberts v. Adams,[8] was a case involving an option to purchase real property for $85,000 "payable as mutually agreed by both parties." In holding the purported agreement void for uncertainty, the court said:

> \* \* \* It is firmly established as the law of California that failure to specify or furnish a standard for determination of terms of payment and method of securing the unpaid balance of the purchase price of real or other property is fatal to its enforceability notwithstanding any desire of the courts to be liberal and helpful. \* \* \*

Appellant's counsel earnestly argues that he was prepared and offered to pay cash upon the exercise of the option, and that this fact cured any uncertainty about terms of payment that inhered in the option clause of the lease.

The court said the point had been ruled adversely in several cases.

In Westphal v. Buenger,[9] it was said:

> \* \* \* An agreement in writing, which does not purport to give an absolute right, without further negotiation thereon, cannot be specifically enforced. Appellant contends that he is now ready and willing to pay the entire $16,000, but such is not of the terms of the contract. There were to be mortgages, and, while it might be generally considered more acceptable to have the actual cash than mortgages, the court will not make a new contract for the parties, because it appears that conditions claimed by one party, but not in the contract, might prove more beneficial to the other party.

In the matter now before us, the option contract provided that payment was to be on terms to be *negotiated*. Here there was no negotiating at all. The plaintiff demanded that he get the benefit of the two mortgages, one bearing interest at 5¼%, the other at 6%.

There is a valuable property right in having a mortgage at 5¼% interest when the going rate of interest on first mort-

---

7. 163 Tex. 596, 358 S.W.2d 614 (1962).
8. 164 Cal.App.2d 312, 330 P.2d 900, 902 (1958).

9. 324 Ill. 77, 154 N.E. 426, 427.

gages is 8% or more. A mortgagee would undoubtedly discount such a debt in order to get the cash so as to be able to invest it at the higher rate of interest.

The right of the defendants to require a mortgage at the going rate of interest (8% or more) was within the terms of the agreement and was a material term thereof. If plaintiff could assume the mortgages and pay defendants some $5,000 cash, that would be all they could invest at the higher rate. If plaintiff could pay all cash, that would compel defendants to pay off the mortgages and still leave them only the $5,000 to invest. If they had negotiated a mortgage like the ones they had, except at 8% interest, the defendants could have made a profit of 2% or more on the total amount of the indebtedness.

The trial court made a contract for the parties which they never agreed to, and then undertook to enforce it. In doing so it erred and we should not compound the error.[10]

In the case of Pitcher v. Lauritzen,[11] this court said:

Specific performance cannot be required unless all terms of the agreement are clear. The court cannot compel the performance of a contract which the parties did not mutually agree upon. See

Bowman v. Reyburn, 115 Colo. 82, 170 P.2d 271.

In speaking of certain terms required for specific performance, the author in 49 Am.Jr., Specific Performance, Section 22, at page 35 uses this language:

"The contract must be free from doubt, vagueness, and ambiguity, so as to leave nothing to conjecture or to be supplied by the court. It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. A greater degree of certainty is required for specific performance in equity than is necessary to establish a contract as the basis of an action at law for damages.

I would reverse the case and award costs to the defendants.

CALLISTER, Justice (concurring with the dissent).

I concur with Mr. Justice ELLETT for the reason that I do not interpret the terms of the option agreement as having that degree of definiteness to entitle plaintiff to specific performance.

10. The prevailing opinion relies upon the case of Continental Bank v. Bybee, 6 Utah 2d 98, 306 P.2d 773. That case was an action for money based upon a note. It is not authority for this court to grant specific performance.

11. 18 Utah 2d 368, 372, 423 P.2d 491.