Edwin O. GOSSNER, Plaintiff and Respondent,

v.

DAIRYMEN ASSOCIATES, INC., Berkeley Bank for Cooperatives, et al., Defendants and Appellants.

No. 15679.

Supreme Court of Utah.

May 6, 1980.

W. Clark Burt of Callister, Greene & Nebeker, Salt Lake City, for defendants and appellants.

Dale M. Dorius, Brigham City, for plaintiff and respondent.

MAUGHAN, Justice:

Plaintiff Edwin O. Gossner filed an interpleader action to determine whether respondents, E. Odell Summers and Orval E. Petersen, or appellant Berkeley Bank for Cooperatives was entitled to $31,635.29, which Gossner admittedly owed to one or the other of them. Upon a trial to a jury and the jury's answers to interrogatories, the court entered a judgment in favor of respondents Summers and Petersen, for $12,000 plus each and the balance to Berkeley Bank. The judgment is affirmed. Costs to Summers and Petersen.[1]

As a matter of convenience this opinion will refer to plaintiff Edwin O. Gossner, an individual, as Gossner; the Gossner Cheese Company, a corporation, as the Cheese Company; Dairymen Associates, Inc., as Dairymen; E. Odell Summers and Orval E. Petersen, as the Farmers; and Berkeley Bank For Cooperatives, as the Bank.

The Farmers, who are engaged in dairy farming in Box Elder County, entered into a marketing agreement with a dairy cooperative, Dairymen, in March 1974. It provided, Dairymen would market all milk delivered to them by the Farmers, and in turn would pay them monthly for the milk so delivered. Gossner, the president of the Cheese Company, purchased milk from Dairymen, which was posted on the latter's books as an "account receivable."

In January, 1975, Dairymen began to experience financial difficulties. This fact became known to the Farmers, who told Dairymen of their desire to terminate the contract. Dairymen objected and stated it would not agree to a termination of the agreement because respondents had not given written notice, as required by the terms of the contract, viz., notice of termination could not be given before "any subsequent anniversary date following the first anniversary date of the agreement", which would be in March 1976.

In March 1975, Dairymen executed large promissory notes to the Bank. As security, Dairymen granted the Bank a security interest (Chattel Mortgage) in its personal property, including its accounts receivable, which was duly filed in accordance with the Commercial Code.[2]

On April 9, 1975, the Farmers' counsel sent a letter to Dairymen announcing their intention to terminate their relationship with Dairymen. The milk hauler, George Thornley, continued to go to the Farmers' dairies until July of 1975 to pick up milk, take it to Dairymen facilities and then deliver it to Gossner. In July 1975, Summers and Petersen instructed the trucker, George Thornley, to cease delivering their milk to Dairymen, and to deliver their milk thereafter directly to Gossner. At that time both Gossner and Dairymen were so notified. And thereafter Thornley followed that direction, delivering the Farmers' milk directly to Gossner until November 1975. From July to November 1975, Thornley followed that plan. Notwithstanding the foregoing, Dairymen continued to send checks to the Farmers through the summer and until November 1975. The checks sent to them for September failed to clear the bank; and this again occurred for the checks sent in October and November. Meanwhile, Gossner withheld payment after September 1975, which is the fund here in dispute.

In November 1975, the Farmers filed actions in Weber County against both Gossner Cheese Co. and Dairymen for the $24,000 plus owed them for milk delivered in September, October, and November of 1975. Dairymen failed to answer the complaint and default judgments were entered

---

1. 45 Am.Jur.2d, Interpleader, Sec. 41.

2. Title 70A, U.C.A.1953.

against it. The Cheese Company, which denied any indebtedness was dismissed. Gossner, who was not a party to the Weber County action, filed this interpleader action.

Upon the trial to the jury the court submitted interrogatories as to the disputed issues of fact; and the jury answered them favorably to the contentions of the Farmers. These included a question concerning whether the Farmers had terminated their agreement with Dairymen before delivering the milk to Gossner, the source of the fund before the court, to which the jury answered, "yes." And as to the amount owed each of them, as to Summers, the jury found $12,127.67, as to Petersen, $12,467.13.

■ This Court assumes the jury believed those aspects of the evidence which sustain the findings and the judgment, and therefore makes its analysis of the case and draws its conclusions on the basis of the facts so found.[3]

One of the arguments made by Berkeley is the not unusual one, viz., the claims of the Farmers to receive payment from their milk directly from Gossner is not supported by the evidence. The response made to this seems adequate: the testimony of both Farmers as to the facts recited herein, the letters written, their directions to the trucker, George Thornley, and his corroborating testimony, and the records of their milk so delivered during September, October and November 1975; and the fact Gossner, acting upon such directions withheld any further payments to Dairymen.

The Farmers' obligation to Dairymen was not unconditional. Their contract to deliver milk to that company was conditioned upon its monthly payments therefor. After the Farmers knew that Dairymen was insolvent, and especially after its checks proved worthless, it was their right and privilege to send their milk directly to Gossner, or to anyone else they might have desired. The jury was neither obliged to believe, nor are we required to accept, that their obligation compelled them to keep sending milk to Dairymen when they knew the latter was insolvent, and would not pay for it.

■ There is no legal concept, which would compel the conclusion that under such circumstances, the milk thereafter delivered directly to Gossner must be deemed to belong to Dairymen. The incongruity and the unfairness of such a conclusion is clearly revealed by examination of the converse: What would have been the result if Dairymen had sued the Farmers to compel them to continue delivering milk it could not pay for, and incidentally, for which the checks actually issued were dishonored? Since the Bank's position is derivative, it could have no better right than Dairymen. Accordingly, we hold there is ample credible and competent evidence to justify the trial court's submission of the interrogatories to the jury and to support the jury's findings, as to the $12,000 plus, that each of the defendants was entitled to of the funds held by Gossner. The trial court's approval thereof should be regarded by this Court as adding credence to the correctness of that conclusion.[4]

On appeal, the Bank, which has a security interest in the accounts receivable of Dairymen, contends the judgment in this action cannot be sustained on the ground the Farmers were precluded from litigating issues which had been or could have been determined in a prior action in Weber County. In this first action the Farmers alleged Dairymen was indebted to them for milk purchased and delivered from the Farmers to Dairymen during September, October, and November 1975. The Cheese Company was joined in this action, the Farmers alleged the Cheese Company had received the milk the Farmers had delivered to Dairymen. The Farmers pleaded for a restraining order to prevent the Cheese Company from delivering monies, in the amount owed to them, for the milk delivered through Dairymen.

Dairymen defaulted and the Farmers took a default judgment. On the same day,

---

**3.** *Memmott v. United States Fuel Company*, 22 Utah 2d 356, 453 P.2d 155.

**4.** See *Prince v. Peterson*, Utah, 538 P.2d 1325, citing *Geary v. Cain*, 69 Utah 340, 255 P. 416.

a writ of garnishment was issued, directed to the Cheese Company. In response thereto, the Cheese Company denied it was indebted to Dairymen. The Cheese Company responded it knew of another person who owed a debt to Dairymen, viz., Edwin O. Gossner, in the amount of $31,635.29.

Subsequently, Gossner filed this present interpleader action to determine to whom the monies he held should be paid. The first action against the Cheese Company was, by stipulation, dismissed with prejudice. In their initial answer to the interpleader the Farmers claimed their entitlement to the money by virtue of their judgments awarded in Weber County.

Subsequently, during the course of the trial, in response to a motion by the Bank to strike the testimony concerning the Farmers' termination of their marketing agreement with Dairymen, and their demand for payment directly from Gossner; the court permitted an amendment of the pleadings to conform to the evidence. Specifically, the Farmers' original pleadings set forth a different basis for recovery (their prior judgments) than the one upon which they presented evidence and pursued recovery at the trial.

Briefly, the Farmers' evidence (which the jury believed, as reflected in their findings), showed the Farmers had terminated their marketing agreement with Dairymen. They instructed their contract milk hauler, Thornley, to deliver the milk directly to Gossner. Both Dairymen and Gossner were apprised of the Farmers' directions to Thornley. The Farmers met with Gossner and informed him they wanted payment from him. Gossner was concerned with the validity of the marketing agreement between the Farmers and Dairymen and wanted the matter resolved legally before he paid the Farmers directly. According to the Farmers, Dairymen insisted the marketing agreement was valid and submitted bills to Gossner, which in spite of his knowledge of the Farmers' claims, Gossner paid to Dairymen. Dairymen, in turn, sent checks to the Farmers. The checks for September, October, and November were returned for insufficient funds, which the Farmers sought to recover in the first action in Weber County.

The Farmers computed their claims based on the milk receipts they received from the milk hauler, Thornley. The Bank claimed the money as an account receivable based on two statements submitted by Dairymen to Gossner. Each recited merely the poundage of milk and butterfat and the total sum due. One recited it was a statement for October 1975. The others recited it was the total due for milk delivered in November. There were no supporting documents submitted to determine any of the particulars about the milk, such as, its source, the time delivered. The tickets by which Gossner substantiated the amount of milk which had been received were not available at the trial. Gossner submitted to the court in this interpleader action the sum of the two statements submitted by Dairymen minus $775.50, an amount he deducted for bad checks he had received from Dairymen.

There are two issues which the Bank urges on this appeal the Farmers were precluded from litigating in the second action on the grounds of res judicata and collateral estoppel. First, under the doctrine of res judicata, the Farmers had an opportunity and failed to raise their claim against Gossner for payment for the milk in the Weber County action. Second, and interrelated to the first, the Farmers were bound by the judgment in Weber County, which was based on the fact that Dairymen owed the Farmers for milk delivered to Dairymen. This latter claim is predicated on the doctrine of collateral estoppel.

The claim Gossner owed the Farmers directly could not have been litigated in the first action; he was not a party. The first action was against a corporation, the Cheese Company, which denied any indebtedness to Dairymen in its answers to the writ of garnishment. At the trial of the second action, a representative of the Cheese Company testified it was Edwin O. Gossner, acting as an individual and not the Cheese Company, who purchased milk from Dairymen. Furthermore, it was Gossner,

the individual, who filed the interpleader action. The Bank cites no authority to sustain the claim, viz., if a party sues the wrong person, he is thereafter precluded from filing an action against the one who is liable; and including therein claims not asserted in the abortive action.

The judgment of the Farmers against Dairymen in Weber County was a default judgment, wherein the Farmers alleged the milk was purchased by and delivered to Dairymen. By the amendment to their pleadings in the interpleader action, the Farmers asserted a different claim, viz., a claim Gossner was indebted directly to the Farmers for milk delivered and received:

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action.[5]

"Where an action is brought against the defendant and although he is duly served with process he fails to appear or answer, and judgment by default is rendered against him, the judgment is conclusive as to the cause of action upon which the action was based. But in a subsequent suit based upon a different cause of action the judgment is not conclusive as to the truth of the allegations in the plaintiff's complaint. . . . "[6]

Thus, the Farmers were not precluded in this second suit from litigating the issue of whether Gossner was indebted to them for milk delivered to him.

The jury was clearly and specifically instructed, if they found the Farmers' only claim to the money was through their default judgments against Dairymen, they must find for the Bank. The jury was further instructed, if they found from the evidence the Farmers at all times looked solely to Dairymen for payment for the milk delivered in September, October, and November then they must find the Farmers did not look to Gossner for payment of the same monies for the same milk delivered.

From the evidence adduced at the trial, the jury found the Farmers had terminated their marketing agreement with Dairymen on April 9, 1975. The money tendered into court was not an account receivable of Dairymen and was not owed by Gossner to Dairymen. The money was owed to the Farmers by Gossner for milk delivered directly to Gossner by the Farmers. There is substantial, credible evidence in the record to sustain the jury verdict.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting):

I respectfully dissent.

I deem the affirmance of the present action to be erroneous in two respects. First, the claim asserted by the Farmers [1] in the trial below, and adopted by the triers of fact therein, should have been precluded by the doctrine of res judicata. Second, the trial court's denial of the Bank's motion for a directed verdict on the issue of contract termination with respect to Dairymen should have been granted, as (1) the evidence appearing of record establishes, as a matter of law, that no such termination occurred, and (2) the verdict establishing such termination and consequently finding a debt owed to Farmers directly by Gossner constituted an improper adjudication of Gossner's rights.

The majority's disposition of the Bank's claim of res judicata reflects a fundamental misconception of the role of that doctrine, both in general and as it relates to the action in interpleader presently before this Court. In answer to the Bank's invocation of the principle, the majority states that the Bank is asserting only that the factual issue of a debt between Gossner and Farmers is precluded, and that such a claim is invalid since Gossner, in his individual capacity, was not a party to the prior action, the parties defendant in that action being Dairymen and Cheese Company.

---

5. Restatement, Judgments, Sec. 68, p. 293.

6. Id., Sec. 68, Comment f., p. 302.

1. This opinion will adopt the majority's system of party identification.

Res judicata operates not to prevent the relitigation of isolated issues of fact which were argued or arguable in a prior proceeding, but to preclude the assertion of an entire claim which was or should have been raised in the first action.[2] Its underlying purpose is to lay to rest those disputes existing between the parties to a given lawsuit which were or should have been raised pursuant thereto, the parties having fairly been given their day in court.[3] It is generally accepted in this, as in other jurisdictions, that the doctrine is properly applicable: (1) as between the parties to the prior litigation; (2) where the prior action proceeded to judgment on the merits; and (3) where the subsequent dispute arises out of the same cause of action forming the basis of the prior litigation.[4] These three elements being present, all claims of right arising from the original plaintiff's cause of action are extinguished, and the right represented by judgment is substituted therefor, the original claim and all others relating to the cause of action merging therein.[5]

The Weber County judgment in favor of Farmers and against Dairymen, was a valid judgment on the merits. The law recognizes that a judgment obtained by default has no less validity than one following plenary proceedings.[6] The default in the Weber County suit was not the product of any stipulation regarding parties to, or claims

available under, the present action.[7] The first requirement is thus satisfied.

It is with the second element of res judicata, identity of parties to the dispute, that the majority seems to take issue. Since Cheese Company, not Gossner, was joined therein, reasons the decision, such identity is lacking.

The application of res judicata does not depend on an identical roster of parties in both actions. Concisely stated, the rule is that a prior judgment is binding as between the parties thereto (and their privies) in any subsequent proceeding between those same parties.[8] The presence or absence of additional parties to either action is irrelevant unless such additional parties are either invoking or defending against the application of the rule.

Gossner's role in the present action is that of stakeholder in an interpleader action. Interpleader is said to proceed in two stages. In the first, the stakeholder (unless he is asserting a claim in the stake in his own capacity) admits the debt in question and petitions the court to resolve the identity of the creditor between, or among, rival claimants thereto. In the event that the action is adjudged proper for interpleader, the stakeholder deposits the funds, or a bond therefor, with the court, and is *dismissed*. The action then proceeds as a nor-

---

2. See *Belliston v. Texaco, Inc.*, Utah, 521 P.2d 379 (1974); *Bordeaux v. Ingersoll Rand Company*, 71 Wash.2d 392, 429 P.2d 207 (1967).

3. *Adams v. Davies*, 107 Utah 579, 156 P.2d 207 (1945); *Wheadon v. Pearson*, 14 Utah 2d 45, 376 P.2d 946 (1962); *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

4. *East Mill Creek Water Company v. Salt Lake City*, 108 Utah 315, 159 P.2d 863 (1945); *Wheadon v. Pearson*, cited supra; *Mid-Continent Casualty Company v. Everett*, 340 F.2d 65 (10th Cir., 1965).

5. *Yergensen v. Ford*, 16 Utah 2d 397, 402 P.2d 696 (1965); *Adams v. Davies*, cited supra.

6. *Morris v. Jones*, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947); *Gwynn v. Wilhelm*, 226 Or. 606, 360 P.2d 312 (1961).

7. It should be noted in this regard that the Weber County judgment was the product of no stipulation whatever. Dairymen defaulted simply by failing to appear. Cheese Company was dismissed from that action by stipulation, apparently with the understanding that Gossner, in turn, would file the present action. Cheese Company had not, however, been joined in that suit under any theory of separate liability which the stipulation reserved for this action. Cheese Company was joined simply as a debtor of Dairymen (a capacity wholly inconsistent with Farmers' present claim), and the suit sought merely to freeze the assets owing Dairymen pending the issuance of a writ of garnishment. Its release in no way worked a stipulation to the advancement of Farmers' present theory of recovery.

8. See generally 1B Moore's Federal Practice para. 0.411[1].

mal civil suit, the rival claimants to the stake being the parties in interest.[9]

Thus, in the present action, Gossner's non-participation in the prior action is wholly irrelevant, in that he is neither claiming or defending against the application of res judicata. The actual parties in interest, the merger of whose dispute is in question, are Farmers and the Bank, Dairymen's privy.[10] In short, the parties to the dispute in Weber County are the parties to the present dispute. It is true, as the majority implies, that had Farmers raised their present claim in the Weber County proceeding, they would have had to join Gossner. The Weber County judgment, however, was determinative of that claim which could be valid only in the event of a termination of the marketing agreement with Dairymen. Since the party before the court below which disputed such an implied ruling was Farmers, not Gossner, identity of the parties to the dispute is preserved.

It is likewise clear that both claims made by Farmers arise out of the same cause of action. A precise definition of "cause of action" as it relates to res judicata has never been agreed on. With the abandonment of strict common law pleading and the move to broader, permissive pleading rules, the scope of a given cause of action has been expanded in order to perpetuate the underlying purpose of the doctrine—to regard as resolved all matters which were or could have been raised.[11] It is often said that both disputes must relate to the same subject matter,[12] and draw on the same underlying factual questions and evidentiary foundation.[13] Where the foregoing are present, it is generally regarded as inconsequential that the respective claims are different as to form or theory of recovery.[14]

Applying the foregoing principles to the present case, it becomes clear that the action in Weber County, and the present action, entail the same subject matter (payment of funds for milk purchased by Gossner) and rest on identical evidentiary questions (the continued viability of the marketing agreement with Dairymen, and failure of payment for the months in question). In the former action, Farmers sought to recover on a theory of breach of contract, while in the latter, they seek recovery pursuant to novation of contract, substituting Gossner as the debtor. The difference, however, cannot defeat the common derivation of both claims from the transaction in question. Again, it is true that the present claim would have gone against a different party in the prior suit, but this cannot be viewed as altering the nature of the underlying cause of action.

It seems clear that Farmers are currently pressing a claim which they could have, and should have, pursued before this time. To relieve them of the legal obligation of judicial frugality by permitting adjudication of a claim against the Bank which they deliberately omitted from their first suit against Dairymen is arbitrarily to deny to the Bank the benefit of a legal defense to which it is fully entitled.

Even if the propriety of adjudicating Farmers' claim in the court below be conceded, the nature of the pleadings and proof in the present action render inescapable the trial court's error in submitting the question of contract termination to the jury. Bank timely made a motion for a directed verdict on this point, which motion should have been granted by the trial court.

---

**9.** 3A Moore's Federal Practice para. 22.14[1]; see also Rule 22, Utah Rules of Civil Procedure.

**10.** That the Bank stands in privity with Dairymen as successor in interest to the latter's accounts receivable, see Restatement, Judgments, § 89; *Golden State Bottling Company v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973).

**11.** *Belliston v. Texaco, Inc.*, cited supra; *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464 (3rd Cir., 1950).

**12.** See, e. g., *In re Potts*, 142 F.2d 883 (6th Cir., 1944).

**13.** *Hill v. Cole*, 195 Okl. 297, 157 P.2d 165 (1945); *Meder v. CCME Corp.*, 7 Wash.App. 801, 502 P.2d 1252 (1972).

**14.** *Wheadon v. Pearson*, cited supra; *Solarana v. Industrial Electronics*, 50 Haw. 22, 428 P.2d 411 (1967).

The evidence in the trial being clearly established that Farmers, on April 9, 1975, notified Dairymen of their intent to terminate the marketing agreement, evidently due to Dairymen's financial uncertainty at the time. Thereafter, Farmers instructed Thornley, Dairymen's milk delivery agent, to transport the milk formerly sent to Dairymen directly to Cheese Company. Farmers then approached Gossner asking direct payment for milk delivered. By Farmers' own testimony, *Gossner refused such an arrangement,* stating that he wished legal confirmation of the termination and substitute arrangement in order to escape double liability in the event Dairymen became insolvent. Thereafter, through the summer of 1975, though Thornley delivered to Cheese Company directly, Gossner, or Cheese Company, paid Dairymen as per the terms of the marketing agreement. Dairymen, in turn, refused to recognize Farmers' termination declaration as binding, and continued to make payments to Farmers, which payments were accepted through November of that year. The present action arose only when the last three payments failed to clear the bank.

It is unreasonable to conclude, under such circumstances, that a valid termination of contract was effected. Farmers' attempt at termination amounted to a repudiation of the marketing agreement.[15] The majority's observation that Farmers were not bond servants to Dairymen under the contract is well taken. But neither were they bound by their own repudiation; a repudiating party may withdraw the repudiation at any time before the other party to the agreement undergoes a material change of position.[16] The evidence makes it clear that Farmers attempted to substitute an agreement directly with Gossner in the form of a contract novation, in which effort they were unsuccessful.[17] Farmers' subsequent resolution to continue accepting payment from Dairymen, while making no demand therefor from Gossner or Cheese Company, for the better part of a year, inevitably signals an election tacitly to bow out of the termination demand. To permit them to unearth that demand only when the final three payments had failed to clear, and after their initial pleadings in the present action openly acknowledged the continued viability of the marketing agreement with Dairymen, would be to turn a deaf ear to the entire trial record.

A further difficulty regarding the actions of the court below in submitting the matter here under consideration to the jury lies in the propriety of permitting the matter to continue as one in interpleader. Gossner's complaint in interpleader reflected Farmers' then-prevailing theory that its right to payment in this action derived from the Weber County judgment. The prayer for relief therein acknowledged that the debt in question *was owed to Dairymen,* but asserted uncertainty regarding whose derivative claim thereon was superior—Farmers', by reason of the judgment, or the Bank's, by reason of the security interest. *Nowhere did Gossner admit to any obligation to Farmers directly.* The amendment of Farmers' pleadings to reflect such a theory rendered the matter improper for interpleader, as all issues relating to the transaction could no longer be resolved without joining Gossner as a claimant,[18] or securing from him a further admission.[19] If it be

15. *Pitcher v. Lauritzen,* 18 Utah 2d 368, 423 P.2d 491 (1967).

16. See generally 4 Corbin on Contracts, § 980.

17. That novation of contract requires approval of the substitution by all parties thereto, see 15 Williston on Contracts, § 1869.

18. It is of note that the stipulation filed with the court in this case specifically forecloses any right in Farmers or the Bank to bring a claim against Gossner directly: "(Defendants) hereby stipulate and agree that they will not continue or institute any legal action against the plaintiff in any State Court or United States Court that in any manner concerns the subject matter of this action." Farmers are thus precluded by their own agreement from moving against Gossner directly; a fortiori, they should be barred from securing what is, in effect, a judgment against him.

19. Rule 22, Utah Rules of Civil Procedure; see also *First National Bank of Portland v. Noble,* 179 Or.2d 26, 168 P.2d 354 (1946).

asserted that Farmers' present claim is sufficiently novel to avoid preclusion under res judicata, it must likewise be admitted that it is urged against a party not joined as an adverse claimant, and the submission of the termination issue to the jury marked a judicial willingness to determine the rights and obligations of that party without bringing him into court on a proper counterclaim. Such a course of action is improper under Utah procedural law.[20]

For the foregoing reasons, I submit that the instant case should be reversed and remanded to the trial court with directions to enter judgment in favor of the Bank.

**20.** See Rule 19(b), Utah Rules of Civil Procedure.