**D. H. OVERMYER CO., Inc., a Colorado corporation, Appellant,**

v.

**Roger A. BROWN, individually and as Trustee and Agent for the individuals hereinafter named, Lewis M. Jones, et al., Appellees.**

**No. 235–70.**

United States Court of Appeals,
Tenth Circuit.
March 22, 1971.

McWILLIAMS, Circuit Judge.

The trial court denied specific performance of an agreement to enter into a contract for the purchase and sale of the capital stock of the National Warehouse and Distribution Company, hereinafter referred to as National, and the would-be buyer of the stock now seeks reversal of the judgment dismissing his claim.

D. H. Overmyer Co., Inc., a Colorado corporation, as the assignee of D. H. Overmyer Co., Inc., a Utah corporation, the two corporations being hereinafter referred to either as Overmyer or the buyer, brought suit against Roger A. Brown, individually and as trustee and agent for ten named individuals, and against National, of which the individual defendants were the shareholders, to compel the several shareholders to specifically perform an agreement for the sale to Overmyer of all of the outstanding shares of capital stock of National. The agreement sought to be enforced was a so-called letter agreement executed by the parties on March 4, 1969. The letter agreement provided for the purchase by Overmyer of all the issued and outstanding capital stock of National from its shareholders for the total sum of $130,600, the sum of $10,000 being payable upon the execution of the letter agreement. The agreement further provided that the effective date of the stock transfer was February 28, 1969, and that the actual delivery of the stock would take place at the closing date on March 27, 1969.

The letter agreement then went on to provide in paragraph 4 that on the aforesaid closing date the shareholders and Overmyer "shall execute a contract of sale which shall provide for inter alia substantially the following: * * *." Thereafter were listed some sixteen different items, or category of items, to be included in the contract of sale. Two of the items to be thus included in the contract appear as paragraphs 4(b) and

Robert M. Anderson, Salt Lake City, Utah (Roger H. Thompson, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for appellant.

Arthur H. Nielsen, Salt Lake City, Utah (Nielsen, Conder, Hansen & Henriod, Salt Lake City, Utah, on the brief), for appellees.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

4(i) of the letter agreement. Since these two provisions are the root of the present controversy they are hereinafter set forth verbatim.

The letter agreement by paragraph 4(b) provided that the following should be included in the forthcoming contract:

"Appropriate warranties, representations and indemnifications with respect to the financial status of the Corporation [National] as represented by its balance sheet certified by each of the shareholders at February 28, 1969, which balance sheet shall be delivered at the closing date or prior thereto."

The letter agreement by paragraph 4(i) provided that the following should also be included in the contract which the parties were to execute:

"A covenant by the selling shareholders to indemnify Buyer and Guarantor against any liabilities not set forth on the balance sheet of the Corporation at February 28, 1969."

Very shortly after the execution of the letter agreement, and before Overmyer was even given the balance sheet of National, Overmyer became aware of what it describes in its brief as "numerous significant liabilities that had not been disclosed prior to March 4, 1969, in the Agreement, or otherwise, but which materially affected the basic transaction." In its brief Overmyer also stated that notwithstanding these "belated disclosures," it nonetheless still desired to purchase the stock in question, "but felt that under the terms of the March 4 Agreement it was not obligated to assume the cost of these liabilities without some indemnification by selling stockholders or without some adjustment in the purchase price."

In any event, Overmyer and the shareholders were not thereafter able to agree upon a contract for the purchase and sale of National's stock. Overmyer submitted some three proposed contracts,

and the shareholders countered with one of their own. The inability of the parties to agree upon a contract stems from their differing interpretations of sections 4(b) and 4(i) of the letter agreement of March 4, 1969. When it developed that the parties were not going to be able to agree upon a contract, Overmyer instituted the present proceeding and sought specific performance of the March 4 letter agreement.

Trial of the case was to the court, sitting without a jury, at which time considerable documentary evidence, as well as the testimony of all interested persons, was presented to the court. Then, on the record as thus made, the trial court found, inter alia, that the March 4 letter agreement was indefinite and uncertain in respect to certain essential and material matters and that such matters were the subject of further negotiations by the parties. Specifically, the trial court held that although the letter agreement was clear and unambiguous in requiring indemnification for liabilities *not* shown on the balance sheet, paragraph 4(b) of the letter agreement, calling for inclusion in the contract of "appropriate warranties, representations and indemnifications" with respect to the financial status of National as represented by the balance sheet, was uncertain and indefinite in that it did not specify what would be "appropriate" warranties, representations and indemnifications. The trial court observed that the inability of the parties to agree on what warranties would be included in the finalized contract demonstrated and "lighted up" the area of indefiniteness and uncertainty in the March 4 letter agreement. Accordingly, the trial court declined to grant specific performance. Our review of the matter convinces us that the findings and conclusions of the trial court find support in the record and under the circumstances should not be disturbed.

The general rule as to when a court acting under its equitable powers will decree specific performance of a con-

tract is well stated in 49 Am.Jur. Specific Performance § 22, where the following appears:

"In order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance. The indefiniteness of an agreement is an adequate reason for refusal to direct specific performance thereof. The contract itself must make the precise act which is to be done clearly ascertainable. It is fundamental that in order to do this and to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain, and complete. The contract must be free from doubt, vagueness, and ambiguity, so as to leave nothing to conjecture or to be supplied by the court. It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. * * *

"Whenever it appears that material matters are not clear, certain, and complete, but are left by the parties so obscure or undefined that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, the court cannot say exactly upon what substantial terms they agreed, the case is not one for specific performance. Equity cannot make a new contract for the parties, but must enforce the contract according to its terms or not at all; the court will not make a contract for the parties or supply any material stipulation thereof. If a decree of specific performance should be entered in such a case, it would be uncertain whether the court was enforcing the contract the parties had agreed upon, or whether it was making a new agreement for them, and decreeing its execution. * * * "

As concerns an agreement to enter into a contract, the general rule is that where the agreement itself contains all essential terms it may be specifically enforced even though the parties contemplated the subsequent execution of a formal contract. The converse of this proposition is that an agreement to enter into a contract will not be specifically enforced where the agreement is incomplete or indefinite as to substantial and material matters. And the question as to whether a particular matter is of only minor significance, or is substantial, material, and essential to the making of the contract, is frequently one of degree. 81 C.J.S. Specific Performance § 35b; 165 A.L.R. 756–59; and 122 A.L.R. 1217–27. *See also* Corbin on Contracts § 29 (1963) and Williston on Contracts § 48 (3d ed. 1957).

Utah would appear to be in accord with the general contract law set forth above. So, in Bunnell v. Bills, 13 Utah 2d 83, 368 P.2d 597 (1962), it was held: (1) the fact that part of the performance is that the parties will in the future enter into a contract does not render the original agreement any less binding; but that (2) the original agreement can only be enforced by the courts if the obligations of the parties are set forth with sufficient definiteness that it can be performed. In like vein, the Utah Supreme Court in Pitcher v. Lauritzen, 18 Utah 2d 368, 423 P.2d 491 (1967), declared that specific performance cannot be required unless "all terms of the agreement are clear." And in Valcarce v. Bitters, 12 Utah 2d 61, 362 P.2d 427 (1961), it was stated that the courts cannot "fabricate" the kind of a contract the parties ought to have made and then enforce it.

Viewed in the light of the foregoing principles, we find no error in the determination by the trial court that the letter agreement of March 4, 1969, was not complete and on the contrary was indefinite and unclear on a matter of substance to the end that a court of equity should not, indeed could not, order its enforcement. By paragraph 4(i) of the

letter agreement of March 4, 1969, the several shareholders did agree to indemnify the buyer against any liabilities *not* included on the February 28, 1969, balance sheet of National. However, paragraph 4(i) was not the real stumbling block. Paragraph 4(b) of the letter agreement called for "appropriate" warranties, representations and indemnifications with respect to the financial status of National as shown by the foresaid balance sheet. The letter agreement was incomplete and unclear in that it did not spell out just what warranties, representations and indemnifications were "appropriate."

As above indicated, the matter came to a head shortly after March 4, 1969, when Overmyer allegedly discovered liabilities of National of which it was not previously aware, and determined that either the purchase price should be reduced or the shareholders should agree to some thirty-one different warranties which Overmyer, but not the selling shareholders, deemed to be "appropriate." Certain of the warranties and indemnifications deemed appropriate by Overmyer related to liabilities which *were* listed on the balance sheet of National. Others related to such things as contingent liabilities, the collectibility of accounts receivable, and the like. Certainly under such circumstances we are disinclined to upset the trial court's finding that the letter agreement was incomplete and indefinite as concerns the warranties, representations and indemnifications required by paragraph 4 (b).

That this incompleteness and indefiniteness relates to a material and substantial matter is evidenced by Overmyer's assertions that it should not be required to assume certain liabilities of National without indemnification by the selling stockholders or an adjustment in the purchase price. Thus, in a very real sense, the matter here in dispute relates to the purchase price to be paid by Overmyer for the stock, which needless to say is a most material matter, not only to Overmyer, but to the selling stockholders as well.

Upon oral argument of this matter counsel for Overmyer brought to our attention the recent case of Kier v. Condrack, 25 Utah 2d 139, 478 P.2d 327 (1970), and urged that the rationale of that case dictated a reversal of the judgment entered in the instant case. We do not so understand *Kier*. In *Kier*, the trial court decreed specific performance of an option to purchase real property and upon review the Utah Supreme Court affirmed the judgment of the trial court. In so doing the Utah Supreme Court first recognized the validity of the general rule that to be enforceable a contract must be sufficiently definite in all its terms that the parties know what is required of them, and then upheld the trial court's finding that the particular contract there under consideration was sufficiently definite to permit specific performance. In *Kier* the alleged indefiniteness and uncertainty in the contract related to the manner of payment of the purchase price, and was not related to the dollar amount, as such, of the purchase price to be paid the seller. As above indicated, in the instant case the indefiniteness and uncertainty in the March 4 letter agreement relates in a real sense to the amount to be paid by Overmyer to the selling shareholders.

As noted above, whether an omission or indefiniteness in a contract pertains to a substantial matter, or is a matter of relatively little importance to the parties, is often one of degree. In *Kier*, the Utah Supreme Court upheld the factual determination of the trial court that the matter of the mode of payment which was to be later negotiated by the parties was not a "major aspect" of the transaction. In the instant case we are upholding the determination by the trial court that the indefiniteness in the letter agreement pertained to a matter of substance.

Judgment affirmed.