**Andrew C. KING, and Mining and Energy Resources, Inc., Plaintiffs,**

v.

**NEVADA ELECTRIC INVESTMENT COMPANY, Defendant.**

No. 91–C–0351S.

United States District Court, D. Utah, Central Division.

April 11, 1994.

---

[redacted]

---

Kay L. McIff, Olsen, McIff & Chamberlain, Richfield, UT, Robert D. Moore, Kevin M. McDonough, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, Robert G. Holt, Kimball Parr Waddoups Brown & Gee, Salt Lake City, UT, for plaintiffs.

Anthony L. Rampton, Bruce D. Reemsnyder, Fabian & Clendenin, Salt Lake City, UT, Kevin N. Anderson, Fabian & Clendenin, Las Vegas, NV, for defendant.

## FINAL JUDGMENT

SAM, District Judge.

The Court, having granted defendant Nevada Electric Investment Company's motion for summary judgment dismissing Count I of the Second Amended Complaint (Revised), and having previously granted defendant Nevada Electric Investment Company's motions for partial summary judgment dismissing all other counts of the Second Amended Complaint (Revised), enters the following:

### *JUDGMENT*

Defendant Nevada Electric Investment Company is hereby granted final judgment dismissing the Second Amended Complaint (Revised) with prejudice, plaintiffs taking nothing thereby, and there is awarded to defendant Nevada Electric Investment Company its costs incurred in this matter as hereafter taxed pursuant to 28 U.S.C. § 1920 and Rule 211, Civil Rules of Practice, U.S. District Court. Nevada Electric Investment Company's Third-Party Complaint, having been rendered moot, is also dismissed with prejudice. The Court's prior rulings and orders are merged herein, and the within Judgment is set forth in this separate document pursuant to the requirements of Rule 58, Federal Rules of Civil Procedure, and shall be effective when entered as provided in Rule 79(a), Federal Rules of Civil Procedure.

## ORDER

March 11, 1994

This matter is before the court on defendant's motion for summary judgment on Count I of the Second Amended Complaint (Revised) and Plaintiff King's motion for revision or reconsideration, in which plaintiff MERI has joined. Plaintiff King has requested oral argument on defendant's motion for summary judgment. This request contradicts the parties' earlier agreement to submit the motion for determination by the court on the pleadings alone. Having reviewed the parties' briefs and being familiar with the case, pursuant to D.Ut. 202(d), the pending matters will be determined by the court on the basis of the written memoranda of the parties without the assistance of oral argument.

Addressing first King's motion for revision or reconsideration, in which plaintiff MERI joins, the court denies the motion for the reasons expressed in all its prior rulings on the summary judgment motions and prior motions for revision and reconsideration and incorporates by reference relevant portions of those earlier decisions. The court made its judgment on the promissory estoppel count of plaintiffs' complaint based on the

arguments and evidence before the court. Plaintiffs' repeated attempts to alter arguments and strategy and attempts to interpret evidence for the court are not helpful nor do they change the court's disposition of any matters which the court has already addressed.

Regarding defendant's motion for summary judgment on Count I, which includes plaintiff King's allegations of fraud, the parties have represented to the court their agreement that if the promissory estoppel decision stands (as this court has ruled it does) summary judgment is appropriate as to these remaining fraud claims.[1] The court has given thoughtful and thorough consideration to the parties' arguments at every stage of these proceedings. It has considered the extensive briefing submitted on all motions, oral argument, underlying evidentiary support and affidavits, where appropriate.[2] Based on the foregoing, and for the reasons advanced by the court in its earlier rulings and articulately restated by defendant in the pleadings submitted in support of this motion for summary judgment as to King's fraud claims, defendant's motion is granted.

So Ordered.

## ORDER AND PARTIAL SUMMARY JUDGMENT—PROMISSORY ESTOPPEL

### April 26, 1993

This matter came on for hearing before the above-entitled court on April 8, 1993 pursuant to defendant Nevada Electric Investment Company's ("NEICO") renewed Motion for Partial Summary Judgment on plaintiffs' promissory estoppel claim contained in Count VI of the Second Amended Complaint (Revised). Plaintiff Andrew C. King was represented by Robert D. Moore; plaintiff Mining and Energy Resources, Inc.

("MERI") was represented by Kay L. McIff; and defendant NEICO was represented by Anthony L. Rampton and Bruce D. Reemsnyder. The Court, having read the parties' memoranda, having heard oral argument, and having issued in open court a bench ruling, the transcript of which is attached hereto and is incorporated herein by reference, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that NEICO's Renewed Motion for Partial Summary Judgment on plaintiffs' promissory estoppel claim appearing as Count VI of the Second Amended Complaint (Revised) is hereby granted, and the same is hereby dismissed with prejudice.

## MEMORANDUM DECISION AND ORDER

### Jan. 22, 1993

This matter is before the court on defendant Nevada Electric Investment Company's ("NEICO") motions for partial summary judgment and a motion to strike the affidavit of Andrew C. King filed in support of plaintiff's opposition to the motion for partial summary judgment against plaintiff Mining and Energy Resources, Inc. ("MERI"). Defendant filed three separate motions for partial summary judgment—a motion for partial summary judgment against plaintiff MERI, a motion for partial summary judgment on contract issues and a motion for partial summary judgment on Second Amended Complaint (Revised). The motions were consolidated for hearing on December 1, 1992. Plaintiffs were represented by Kay L. McIff, Robert D. Moore, Robert G. Holt and Kevin M. McDonough. Anthony L. Rampton, Kevin N. Anderson and Bruce D. Reemsnyder entered an appearance for defendant. The court entered an Order dated December 15, 1992 indicating its disposition of the motions

---

1. "If the court concludes that it appropriately ruled on the promissory estoppel claim, . . . then Plaintiffs must state that the Court should grant Defendant's motion." Plaintiff King's Response at 22.

2. A motion to strike portions of King's Supplemental and Clarifying Affidavit testimony was

submitted and considered by the court. The motion was denied with the court stating it would consider the relevant, admissible testimony presented in the Supplemental Affidavit and, consequently, disregard irrelevant and inadmissible offerings. The court gave what weight it deemed appropriate to the testimony in the Supplemental Affidavit.

and reserving the right to prepare a supplemental memorandum decision. This decision is pursuant to and in conformance with the court's intentions as stated in the earlier Order.

## I. Federal Standards For Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] E.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion that always remains on the moving party. *See* 10A C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record and affidavits, if any, it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. In a case where a party moves for summary judgment on an issue for which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an *absence of evidence in the record* to support the nonmovant's case. *Id.*, 477 U.S. at 323, 106 S.Ct. at 2552. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific

facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless, and the moving party may be entitled to summary judgment as a matter of law. *Id.*

## II. Count I

Count I of plaintiffs' Second Amended Complaint (Revised) makes claims of fraud and deceit on behalf of both King and MERI. Defendant's motion goes only to MERI's claims. Plaintiffs allege that NEICO intentionally or recklessly deceived and misled plaintiffs into believing that NEICO would negotiate a Mine Management Agreement ("Mine Agreement") whereby MERI and/or King would "operate" the Genwal

---

1. Whether a fact is material is determined by looking to relevant substantive law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Mine under an independent contract arrangement.[2] As a result of the alleged fraud and deceit, plaintiffs were induced to relinquish a coal property package to which plaintiffs had assigned substantial worth. *See* Second Amended Complaint (Revised) at paragraphs 59–65.

Under the federal summary judgment standard outlined above, NEICO, the moving party, has the burden of establishing the nonexistence of a genuine issue of material fact. In a case such as this where a party moves for summary judgment on an issue for which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case. This is the approach NEICO has taken. It has attempted to show the court that with respect to MERI's claims of fraud and deceit, that there is a complete failure of proof concerning at least one essential element of MERI's case, thus rendering all other facts immaterial.

To establish fraud, a party must prove by clear and convincing evidence each of the following elements: (1) a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation; (5) for the purpose of inducing the other party to act upon it: (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and

was thereby induced to act; (9) to that party's injury and damage.

*Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62, 66 (Utah Ct.App.1992) (citations omitted).

NEICO has characterized plaintiffs' fraud and deceit claims as being based primarily on paragraph 5 of the June 8, 1988 Letter Agreement ("Letter Agreement"), in which the parties agreed to negotiate a Mine Agreement with plaintiff King, "in his individual capacity and unrelated to his capacity with MERI," under which King would operate the Genwal Mine for NEICO. Second Amended Complaint (Revised) Exhibit E. NEICO asserts that there were no representations of any kind made to MERI and that the agreement was reached solely with King, as demonstrated by the plain language of the Letter Agreement. Furthermore, the plain language of the Letter Agreement indicates that MERI was not a third party beneficiary to NEICO's promise to negotiate a Mine Agreement.

Three of the essential elements of a fraud or deceit claim can be summed up as requiring a material misrepresentation. NEICO asserts there is no proof of any affirmative, material misrepresentation by NEICO to MERI. Thus, MERI has failed to state a claim and there is a complete failure of proof concerning an essential element of MERI's case.[3]

Plaintiffs would rather have the fraud and deceit claim based upon a much broader set of facts, including but not limited to events described in paragraph 25 of the Second Amended Complaint (Revised), which they

---

**2.** The agreement in question is contained in paragraph 5 of the June 8, 1988 Letter Agreement in which the parties agreed to negotiate a Mine Management Agreement. The paragraph provides:

> During the Option Period, NEICO and Andy King, in his individual capacity and unrelated to his capacity with MERI, will negotiate in good faith to conclude a Mine Management Agreement (MINE AGREEMENT) under which Andy King will operate the GENWAL MINE for us. The MINE AGREEMENT would take effect upon the closing of the Option Agreement by NEICO or its nominee purchasing all of the stock of GENWAL. Either party may terminate the MINE AGREEMENT for any reason, at its option, at any time. At time

of termination, Mr. King will be paid whatever is owed under the MINE AGREEMENT.

**3.** For purposes of the summary judgment motions before the court, NEICO did not dispute plaintiffs' construction of the material facts. NEICO also cited to documentary and testimonial evidence relating to MERI's involvement, or lack thereof, in the transaction at issue, and MERI's acquiescence in the events that transpired and its ratification of King's actions. *See* NEICO's Statement of Facts contained in Memorandum in Support of Motion for Partial Summary Judgment Against Plaintiff MERI at paras. 4 and 6–18, the material portions of which are essentially not disputed by plaintiffs.

allege reveal a pattern of deceit beginning in 1986 and running through this litigation. The court agrees that NEICO's construction of the claim is too narrow, given plaintiffs' incorporation, by reference, of paragraphs 1–58 of the Second Amended Complaint in Count I, and the broad reference in paragraphs 62 and 63. Even so, to get evidence of this larger pattern of deceit before the court, plaintiffs urge that parol evidence must be considered since the alleged "unambiguous" provisions of paragraph 5 of the Letter Agreement, as well as all other contracts at issue, were procured by fraud. Along these lines, plaintiffs urge the court to adopt the reasoning of the Hawaii case of *Touche Ross, ltd. v. Filipek*, 7 Haw.App. 473, 778 P.2d 721 (1989).

This court has no quarrel with the reasoning of the *Touche Ross* case; however, plaintiffs have failed to present any affirmative evidence of material misrepresentations made to MERI by NEICO. The alleged representations included in paragraph 25 of the Second Amended Complaint, while perhaps relevant, do not rise to a sufficient level of materiality in terms of the overall transaction. Furthermore, while there may very well have been a side agreement between plaintiffs King and MERI regarding the sharing of any compensation King was to receive, plaintiffs have presented no evidence that NEICO was a party to any such alleged "understanding." Rather, plaintiffs' evidence establishes that, at most, NEICO was or should have been aware that King was going to "take care of [MERI and/or Witkowski] through [their] personal relationship." Deposition of Andy King at 119–120 as cited in plaintiffs' Memo in Opp. to Def's. Motion for Partial Summary Judgment Against MERI at 3–4. The testimony supporting plaintiffs' position that MERI would benefit from the deal because King could not give up individu-ally MERI's property, does not, by itself, impose a duty on NEICO regarding representations passed on by King to MERI. Instead the evidence established MERI was part of the negotiations until things changed at or shortly after the May 17, 1988 meeting. Thereafter the deal was struck with King. Neither King nor MERI was forced to conclude the deal with NEICO under the terms of the June 8, 1988 Letter Agreement, rather each did so voluntarily, knowing the terms specifically excluded MERI.

The cases presented by plaintiffs' counsel during oral argument do not alter the court's conclusion regarding the real party in interest question.[4] Plaintiffs' cases are distinguishable, in part, since in those instances the parties seeking to recover were, while removed from the immediate transaction, still in the class of persons defendant intended to influence and thus were entitled to pursue a cause of action for the alleged fraudulent representations. The situation before this court is different. In the instant case MERI was specifically excluded from the deal. All parties knew that NEICO was unwilling to go any further with MERI after the May 17, 1988 meeting and that if any deal was to be struck, it would be with King alone, in his individual capacity, just as the language of the Letter Agreement indicates. King knew it, and so did Witkowski/MERI and the plaintiffs apparently consented to the expressed terms, as evidenced by the signatures on the agreements.

Once NEICO has carried its burden of production and demonstrated the absence of evidence in the record to support the nonmovant's case, the burden shifts to plaintiffs to designate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). As cited above,

> If the defendant in a run-of-the-mill civil case moves for summary judgment ...

---

4. Cases cited by plaintiffs include discussion of privity not being necessary for a party to maintain an action for negligent or intentional misrepresentations. *See Blecick v. School District No. 18 of Cochise County*, 2 Ariz.App. 115, 406 P.2d 750 (1983). *See also Wolther v. Schaarschmidt*, 738 P.2d 25 (Colo.App.1986); *Price–Orem Inv. Co. v. Rollins, Brown and Gunnell, Inc.*, 713 P.2d 55 (Utah 1986); *Hauter v. Zogarts*, 120 Cal.Rptr. 681, 14 Cal.3d 104, 534 P.2d 377 (1975). Plaintiffs also cited law to the effect that a representation, to be the basis of a fraud and deceit action, need not, in all cases, be made to the party seeking recovery; it is necessary only that plaintiff be in the class of persons that defendant intended to influence. *Mead & Mount Const. Co. v. Fox Metal Industries, Inc.*, 511 P.2d 509 (Colo.App.1973). *See also Citizens Bank v. C & H Const. & Paving Co., Inc.*, 89 N.M. 360, 552 P.2d 796, cert. denied 90 N.M. 7, 558 P.2d 619 (App.1976).

based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented ... *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. While the parties may place differing degrees of significance on the various facts and events which transpired during the relationship, or may interpret the same in different ways, there is insufficient evidence to support finding a genuine dispute of material fact regarding MERI's role and rights in the dispute at hand. At most, plaintiffs presented innuendo and speculation to support MERI's fraud claims and right to pursue those claims. Such is not sufficient to override the parol evidence rule and the court must look instead at the plain language of the agreements in question to determine the parameters of the parties' rights and responsibilities.

Finding it unwarranted to allow parol evidence to contradict the unambiguous language of the Letter Agreement, and alternatively finding the parol evidence presented by plaintiffs insufficient to carry their burden, the court has determined MERI's claims in Count I should be dismissed as a matter of law based upon the express language of the Letter Agreement. The court grants NEICO's motion for partial summary judgment as to plaintiff MERI on Count I.

### III. Count II

Count II of the Second Amended Complaint (Revised) is also a fraud and deceit claim by plaintiff MERI. While it too incorporates all prior allegations of the complaint, it is distinguished from Count I in that it focuses on misrepresentations made in connection with the June 7, 1986 lease option agreement ("Option Agreement") entered into by and between MERI and NEICO and NEICO's interpretation of and performance under paragraph 5 of the Letter Agreement, specifically the parties' agreement to negotiate a Mine Agreement with King.

The federal standard for summary judgment has already been outlined above as have the elements required to be proven in connection with a fraud or deceit claim. NEICO takes the position that, with respect to the Option Agreement, there were no misrepresentations of presently existing material facts, there was no reliance by MERI and there was no resultant injury.

MERI complains of three representations made in the Option Agreement: (1) that NEICO would furnish all information relevant to the State Leases; (2) that NEICO held title to the leases free and clear of all liens, encumbrances, leases or agreements of any kind; and (3) that NEICO could consummate the contemplated transaction without conflict with any provisions of any agreement or instrument to which NEICO was a party. *See* Second Amended Complaint (Revised) at paras. 69, 71, 72.

Regarding NEICO's intent to disclose all relevant information pursuant to the terms of the Option Agreement, MERI alleges there was a present intent to defraud at the time the agreement was originally signed and, since NEICO had a duty to disclose the relevant information throughout its relationship with plaintiff, its failure to disclose evidences a "continuing" present intent to defraud. Taking all evidence presented in the light most favorable to plaintiff reveals some factual dispute about what was provided and when. Even defendant appears to concede, for purposes of the summary judgment motions before the court, that some of the information which should have been provided may not have been.

Points two and three of MERI's allegations in this count concern NEICO's holding title to the leases free and clear of all liens, etc., and its ability to consummate the contemplated transaction. Once again, for purposes of this motion, NEICO does not dispute MERI's factual allegations that the California Department of Water Resources ("CDWR") held an equitable interest in the leases in question or that not revealing the interest was contrary to the terms of the Option Agreement. NEICO does, however, present the compelling legal argument that a seller of real property "need not have title at all times during the executory period of a

contract." *Neves v. Wright,* 638 P.2d 1195, 1198 (Utah 1981).

It appears the parties do not dispute that NEICO held title to the leases during the executory period of the NEICO Option Agreement even though CDWR had an unrecorded equitable interest in the leases, or primarily, that NEICO always had the ability to transfer legal title to MERI if MERI had exercised the option. MERI presented no concrete evidence to the contrary, while the best evidence supporting defendant's position is that it did in fact acquire CDWR's interest and convey title to the property in question in December 1988. Thus, once again, the court finds MERI's arguments to be based largely on speculation and therefore insufficient to support a finding of either materiality or damage in the context of its fraud allegations.

■ To prevail on its fraud claims, MERI must prove, among other things, not only a misrepresentation, but that the misrepresentation was material and that it was made with the present intent to defraud, and further, that there was resultant injury. The court has difficulty finding sufficient evidence of each of these elements in connection with the Option Agreement. In particular, while MERI has provided argument concerning the damage it believes it suffered as a result of NEICO's failure to provide the above described information, the court simply did not find the alleged omissions and or misrepresentations to be material or to have caused injury in the legal sense. "A scintilla of evidence" or mere conjecture or speculation about what could have been if defendant had conducted the negotiations differently, absent more compelling evidence, are insufficient to allow MERI to proceed with its fraud claim as it relates to the Option Agreement. The court finds "a fair-minded jury could [not] return a verdict for [MERI] on the evidence presented." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

Count II also involved allegations by MERI of fraudulent conduct relating to paragraph 5 of the Letter Agreement. MERI alleges that NEICO fraudulently contracted with MERI's agent, King, to negotiate a Mine Agreement knowing that King was not authorized by MERI to convey MERI's property for his personal benefit. Plaintiff presented no evidence that NEICO knew King was acting without MERI's authorization, nor that NEICO failed to disclose to MERI its intent to contract with King individually under paragraph 5. In fact all the evidence presented by plaintiff and defendant demonstrated the contrary. MERI was fully aware of King's conduct and authorized him to consummate the transaction on the terms clearly outlined in the Letter Agreement executed on June 8, 1988. MERI's fraud and deceit claims in this regard must fail.

The court therefore grants NEICO's motion for summary judgment on Count II of the Second Amended Complaint (Revised).

## IV. Count III

■ Count III of the Second Amended Complaint (Revised) alleges breach of contract. Plaintiffs assert that the Mine Agreement, which is referenced in paragraph 5 of the Letter Agreement, was to be negotiated and performed in "good faith" and was intended as the vehicle for ensuring plaintiffs' receipt of fair-value for assigning and relinquishing to NEICO their interest in the coal properties. Plaintiffs allege defendant NEICO breached its contractual obligation to negotiate the Mine Agreement.

Paragraph 5 of the Letter Agreement provides:

> During the Option Period, NEICO and Andy King, in his individual capacity and unrelated to his capacity with MERI, will negotiate in good faith to conclude a Mine Management Agreement (MINE AGREEMENT) under which Andy King will operate the GENWAL MINE for us. The MINE AGREEMENT would take effect upon the closing of the Option Agreement by NEICO or its nominee purchasing all of the stock of GENWAL. Either party may terminate the MINE AGREEMENT for any reason, at its option, at any time. At time of termination, Mr. King will be paid whatever is owed under the MINE AGREEMENT.

Second Amended Complaint (Revised), Exhibit E. NEICO interprets this paragraph to mean that after the stock transaction Andy King would manage the Genwal Mine for it. King did act as a managerial employee of Genwal until his termination in October, 1989.

Plaintiffs, however, allege something much different and larger was contemplated by the referenced Mine Agreement. Although none of the terms were specified or agreed on, plaintiffs argue the agreement was to be something like a contract mining arrangement whereby King would be entirely responsible for the production of coal from the Genwal Mine, hire his own employees, purchase necessary equipment and assume all expenses associated with operation of the mine. As compensation, plaintiffs believed King, and through him, MERI, would receive at least 3–4 million dollars and maybe even more. *See* Second Amended Complaint (Revised) at paras. 1–58, 86–88. *See also* Plaintiffs' Memorandum in Opposition of Defendant's Motion for Partial Summary Judgment on Contract Issues ("Plts. Contract Memo") at pp. 2–3, and paras. 16–26.

As stated previously, since this is a summary judgment motion and further, since defendant conceded plaintiffs' factual contentions for purposes of the summary judgment motions, the court is assuming plaintiffs' factual contentions to be correct.[5] Nevertheless, the court views the issue before it to be one of law. Even viewing plaintiffs' claim in Count III to include the general allegations of the Second Amended Complaint (Revised), paragraphs 1–58, as well as paragraphs 61 and 62, the parties' versions of what "Mine Agreement" means or was intended to encompass are irrelevant to the court's determination of whether, given the language in the relevant contract, there is a legally enforceable agreement in place.[6]

Defendant, in its Memorandum in Support of Motion for Partial Summary Judgment on Contract Issues ("Defs. Contract Memo"), correctly summarizes the general state of contract law in Utah.

"A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced." *Valcarce v. Bitters,* 12 Utah 2d 61, 362 P.2d 427, 428 (1961); *accord Pingree v. Continental Group of Utah,* 558 P.2d 1317, 1321 (Utah 1976). This statement reflects the well-established rule in Utah that an agreement will only be enforced where its terms are set forth with sufficient definiteness to allow the court to enforce the agreement of the parties. *D.H. Overmyer Co. v. Brown,* 439 F.2d 926, 929 (10th Cir.1971); *Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597, 600 (1962); *Hansen v. Snell,* 11 Utah 2d 64, 354 P.2d 1070, 1072 (1960).

Sufficient definiteness is required so that the Court is not left with the task of writing an agreement for the parties. "[T]he court cannot fabricate the kind of a contract the parties ought to have made and enforce it." *Valcarce,* 362 P.2d at 428–429; *accord D.H. Overmyer Co.,* 439 F.2d at 929. Although it is not necessary that the contract provide for every collateral matter or possible contingency, the parties themselves must have set forth with sufficient definiteness at least the essential terms of the contract. *D.H. Overmyer Co.,* 439 F.2d at 930; *Nixon & Nixon v. John New & Associates,* 641 P.2d 144, 146 (Utah 1982); *Kier v. Condrack,* 25 Utah 2d 139, 478 P.2d 327, 330 (1970).

Defs. Contract Memo at 13–14.

The parties do not and, given the clear language of paragraph 5 of the Letter Agree-

---

5. The court's accepting as true plaintiffs' factual contentions does not mean it is also accepting as true plaintiffs' legal conclusions intertwined with their statement of facts. Furthermore, the court believes the evidence presented by plaintiffs to support their interpretation of the intended scope and effect of the Mine Agreement was insufficient to carry their burden. Nevertheless, the court will not address these issues since the matter can be disposed of as a question of law.

6. In addition, the court seriously questions MERI's standing to bring the breach of contract claim given the express language of the Letter Agreement. However, the court will address the legal question of enforceability, rather than MERI's standing.

ment, cannot dispute that, at most, paragraph 5 is an agreement to negotiate in good faith to conclude a Mine Agreement with Andy King in his individual capacity. Excerpts from Andy King's deposition confirm that although he had in mind what some of the definite terms of the agreement would be, those terms were never agreed upon with defendant, nor, in many cases, even discussed with defendant. *See* Plts. Contract Memo at paras. 16–26.

Nevertheless, plaintiffs take great pains to point out that their claim is not one for breach of the Mine Agreement, rather they are claiming a failure to negotiate the contemplated Mine Agreement in good faith. They cite law from the Third Circuit and the Southern District of New York[7] to support their proposition that "unlike an agreement to agree, which does not constitute a closed proposition, an agreement to use best efforts [or to negotiate in good faith] is a closed proposition, discrete and actionable." Plts. Contract Memo at 17 (citing *Thompson v. Liquichimica of America, Inc.,* 481 F.Supp. 365, 366 (E.D.N.Y.1979)).

The court is not persuaded that plaintiffs' claim fits into the category highlighted in the above cases. Even the cases cited in Plts. Contract Memo which have allowed claims based on agreements to negotiate, require that the agreements in question otherwise meet the requisites of a contract to be enforceable. *See Channel,* 795 F.2d at 298–299 (citations omitted). *See also Teachers Ins.,* 670 F.Supp. at 498 ("The second and different sort of preliminary binding agreement is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated."). The agreement to negotiate in the instant case leaves open essentially every material and/or major term of the contemplated Mine Agreement, an observation and/or fact confirmed by the Letter Agreement and King's testimony regarding the same.

Accordingly, the court finds paragraph 5 of the Letter Agreement, in so far as it relates to the Mine Agreement, to be too indefinite and uncertain to be enforceable. As stated by the Tenth Circuit:

As concerns an agreement to enter into a contract, the general rule is that where the agreement itself contains all essential terms it may be specifically enforced even though the parties contemplated the subsequent execution of a formal contract. The converse of this proposition is that an agreement to enter into a contract will not be specifically enforced where the agreement is incomplete or indefinite as to substantial and material matters....

Utah would appear to be in accord with the general contract law set forth above....

*D.H. Overmyer Co.,* 439 F.2d at 929.[8]

The above analysis and conclusion are not limited to cases requesting specific performance. They likewise apply to situations where damages are sought. In this vein, the cases of *Ohio Calculating, Inc. v. CPT Corp.,* 846 F.2d 497 (8th Cir.1988) and *Necchi v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693 (2nd Cir.1965) were found by the court to be both relevant and persuasive. *Necchi* involved an agreement to negotiate the renewal of a sales distributorship agreement. In determining whether the agreement to negotiate was enforceable, the court stated:

[The relevant] paragraph, however, does not impose an obligation on Necchi to grant a renewal of the distributorship and it is impossible to say what relief would be appropriate if Necchi failed to examine the possibility of a renewal. Certainly, we cannot ask that a renewal contract [or in the instant case a Mine Agreement] be written for the parties, as it is altogether too conjectural that the parties would have agreed and on what terms. It is impossible to assess any damages, as there is no way that anyone could foresee what would have come from examining the possibility

---

7. *Channel Home Centers, Grace Retail v. Grossman,* 795 F.2d 291, 298–299 (3rd Cir.1986); and *Teachers Ins. and Annuity Ass'n v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y.1987).

8. Defendant also provided the court with numerous other case citations which support this holding. The cases are cited in Defs. Contract Memo at 18.

of executing a new contract, even if it were done in the utmost good faith. Absent a clear definitive statement that the parties wish to litigate or arbitrate differences over the failure to engage in discussion relating to a renewal, and absent some indication as to how damages are to be fixed in case of a breach, the courts should hesitate before enforcing such a contract provision.

*Necchi*, 348 F.2d at 698. The Eighth Circuit, in *Ohio Calculating*, was no less specific in analyzing the enforceability of an agreement to negotiate in good faith. That court found the agreement to negotiate unenforceable and unremediable because, in part, "they provide neither a basis for determining the existence of a breach nor for giving an appropriate remedy." 846 F.2d at 501.

This court agrees with defendant's position that Utah appears likely to follow this sound reasoning. The agreement to negotiate a Mine Agreement contained in paragraph 5 of the Letter Agreement is deficient, indefinite and too vague to be judicially enforced. Accordingly, defendant's motion for partial summary judgment on Count III is granted.

## V. Count IV

■ Count IV alleges breach of duty of good faith and fair dealing and deals only with MERI's claims. It incorporates the general allegations of the Second Amended Complaint (Revised), paras. 1–58, and further alleges that NEICO breached its contractual duty owed MERI under the Option Agreement in various ways.

Regarding the claims of breach of contract relating to the Option Agreement and MERI's additional claims of breach of duty of good faith and fair dealing relating to the same facts, MERI essentially alleges it was put in a "severely disadvantaged negotiating position," as a result of NEICO's failure to disclose information, that NEICO precluded MERI from discovering who the "true owner" of the state leases was and thereby foreclosed any possibility of MERI negotiating with the "true owner", and that all these factors combined to keep MERI in the dark regarding the true value of the coal properties involved in the transaction.

■ To prevail on its claim for breach of contract, MERI must show (1) the existence of a contract; (2) a breach or failure to perform; and (3) resulting damages. *See e.g., Young v. Hansen*, 117 Utah. 591, 218 P.2d 666 (1950). Even assuming for purposes of the summary judgment motion that NEICO failed to fulfill its part of the bargain in full, MERI's evidence of the resulting damage was speculative, conjectural, and/or based on scenarios involving unrelated and in some cases unknown third parties. While MERI did present evidence that it engaged in discussions with other parties during its efforts to market the coal properties, there was no evidence of how these other potential deals were affected by NEICO's conduct or that MERI would have been able to do any other deal or a better deal if it had pulled out of the negotiations with NEICO upon learning of the alleged nondisclosures. Nor did MERI present evidence of how NEICO's failure to provide any of the alleged omitted information caused it damage in its negotiations with NEICO except to say it wouldn't have gone through with the deal. This is insufficient. Simply because NEICO was later able to market the same, or a similar combination of properties in exchange for substantial value does not mean it took advantage of MERI or that MERI would have been able to make the same or a similar deal.

In short, MERI failed to provide evidence of the fact of harm or the amount of damage sustained. At best, it attempted to once again weave a complicated pattern of deception and speculate as to how it was affected and how things might have been different. NEICO met its burden of showing the court there is an absence of evidence in the record to support MERI's case. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The burden then shifted to MERI to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Pro. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. MERI did not meet its burden. Accordingly, defendant's motion for summary judgment on Count IV is granted.

## VI. Count V

Count V alleges breach of duty of good faith and fair dealing on behalf of both plain-

tiffs. Plaintiffs incorporate the general allegations of the Second Amended Complaint (Revised) and include more specific reference to three areas: the Option Agreement; an alleged joint venture agreement; and paragraph 5 of the Letter Agreement.

■ Plaintiffs' claim under the Option Agreement is that NEICO allegedly failed to cooperate with MERI in evaluating the state leases in question, failed to provide information, represented it held title to the leases free and clear when CDWR held an undisclosed interest, and represented it had authority to close the deal without conflict with any other agreement to which NEICO was a party. The court has addressed the substance of these issues throughout the memorandum decision. Once again the court sees serious deficiencies in plaintiffs' proof of damage.

Plaintiffs did little to carry their burden with respect to this claim in their Response to NEICO's Motion for Partial Summary Judgment on Second Amended Complaint (Revised) ("Plts. Complaint Memo"). They address the argument in two paragraphs and basically assert that if NEICO would have provided the relevant materials and been up front with plaintiffs that they "would have learned of NEICO's early misrepresentations" and "would not have transferred their coal properties in reliance on NEICO's contractual promise that they would negotiate in good faith." Plts. Complaint Memo at 24–25. Little more was presented during oral argument.

Once again the court is left to speculate. Plaintiffs simply provided no evidence of a genuine question of *material* fact or support for their allegations or claims of damage with respect to the claims surrounding the Option Agreement.

■ Regarding an alleged joint venture agreement which could potentially create fiduciary duties between the parties, the court cannot find that one was contemplated by the parties or that there is sufficient evidence from which such a relationship can be implied. To be a joint venture, certain elements must be present: (1) the parties must have a community of interest in the performance of a common purpose; (2) the parties must have a right to share in the profits; (3) the parties must have a duty to share in the losses; and (4) the parties must have a mutual right to control the enterprise. *See Sullivan v. Scoular Grain Co.*, 930 F.2d 798, 801 (10th Cir.1991). *See also Vern Shutte & Sons. v. Broadbent*, 24 Utah2d 415, 473 P.2d 885, 886 (1970). The court is not persuaded that either the circumstances of this case or the language of the relevant cases dictates relaxing the requirements set forth above, as plaintiffs have urged.

While plaintiffs did present evidence that at one point during the parties' negotiations a joint venture was proposed and discussed, the evidence also clearly reflected that such a proposal was discarded and replaced by the parties' eventual agreements which were memorialized in the written documents which are at the center of this litigation. The evidence also demonstrated that plaintiffs' own conduct was inconsistent with a joint venture relationship, either actual or implied. *See e.g.,* Statement of Facts in Defs. Memo in Support of Partial Summary Judgment on Second Amended Complaint (Revised) ("Defs. Complaint Memo"), nos. 22 and 34, which were not disputed by plaintiffs.

With respect to the elements required in connection with finding a joint venture, plaintiffs presented little or no evidence that the elements were present. Defendant, on the other hand, cites to undisputed evidence that NEICO and plaintiffs did not have a community of interest in the performance of a common purpose, rather, each was looking out for its own interests and advantage; NEICO and plaintiffs did not have a right to share in the profits nor a duty to share in the losses, rather, they were independent business entities operating on their own terms and looking out for their own interests; and last, NEICO and plaintiffs did not have a mutual right to control the enterprise, rather, MERI had its agenda and expectations and NEICO had its own idea of the deal it wanted done. *See* Defs. Complaint Memo at pp. 30–35. Events occurring on or about May 17, 1988 and thereafter also evidence that the parties were not in mutual control of the enterprise

and in fact were on opposite sides of a business transaction.

Plaintiffs and defendant were parties to a business transaction that is clearly outlined in the written agreements heretofore discussed. The court finds no basis for imposing a joint venture relationship on the parties when there is no evidence that one was intended at the time the transaction was negotiated and/or consummated or that the facts or situation warrant implication of such high fiduciary responsibilities. Such obligations are not lightly assumed by parties to a business transaction, and will not be lightly implied by this court.

Accordingly, the court grants defendant's motion for partial summary judgment on Count V on the claims relating to an alleged joint venture arrangement.

The final allegations of Count V involve paragraph 5 of the Letter Agreement. Plaintiffs allege that defendant breached its duty of good faith and fair dealing owed to both MERI and King particularly relating to the agreement to negotiate a Mine Agreement. The court finds this claim deficient for the same reasons addressed in connection with Count III. As noted in its earlier discussion, there is serious question with respect to MERI's standing to bring any claim relating to paragraph 5 of the Letter Agreement and further, the court finds as a matter of law that the agreement to negotiate is unenforceably vague and indefinite. Consequently, there is no enforceable contract to support plaintiffs' claim of breach of the attendant duty of good faith and fair dealing.

Accordingly, defendant's motion for partial summary judgment on Count V, in so far as it involves plaintiffs' claims for breach of duty of good faith and fair dealing relating to paragraph 5 of the Letter Agreement and the agreement to negotiate a Mine Agreement, is granted. Defendant's motion on Count V is therefore granted in its entirety on all of plaintiffs' claims contained therein.

VII. Count VI

Count VI of the Second Amended Complaint (Revised) alleges claims based on the doctrine of promissory estoppel. The court finds defendant did not sufficiently address the issues involved in this count and therefore did not carry its burden of demonstrating the absence of a genuine issue of material fact as to plaintiffs' promissory estoppel claims. Defendant's motion for partial summary judgment on Count VI is accordingly denied.

So Ordered.

ORDER

Dec. 18, 1992

This matter is before the court on defendant Nevada Electric Investment Company's ("NEICO") motions for partial summary judgment and a motion to strike the affidavit of Andrew C. King filed in support of plaintiff's opposition to the motion for partial summary judgment against plaintiff Mining and Energy Resources, Inc. ("MERI"). Defendant filed three separate motions for partial summary judgment—a motion for partial summary judgment against plaintiff MERI, a motion for partial summary judgment on contract issues and a motion for partial summary judgment on Second Amended Complaint (Revised). The motions were consolidated for hearing on December 1, 1992. Plaintiffs were represented by Kay L. McIff, Robert D. Moore, Robert G. Holt and Kevin M. McDonough. Anthony L. Rampton, Kevin N. Anderson and Bruce D. Reemsnyder entered an appearance for defendant.

The court, after considering the oral and written arguments of counsel, finds as follows.

Regarding Count I of plaintiffs' Second Amended Complaint (Revised), NEICO's motion goes only to plaintiff MERI. The court grants NEICO's motion on this count.

The court also grants NEICO's motion for partial summary judgment on Count II of the Second Amended Complaint (Revised).

Count III of the Second Amended Complaint (Revised) alleges breach of contractual duties, including the duty to negotiate in good faith. The court finds there was no enforceable agreement to negotiate in good faith, that the contract provisions in question were unenforceably vague and that there is

no appropriate remedy available. The court grants NEICO's motion as to Count III.

Count IV of the Second Amended Complaint (Revised) also alleges breach of contract and the duty of good faith and fair dealing, as to MERI only. The court grants NEICO's motion for partial summary judgment on Count IV.

Count V of the Second Amended Complaint (Revised) claims breach of duty of good faith and fair dealing with respect to the NEICO Lease Option, an alleged joint venture agreement and paragraph 5 of the Letter Agreement of June 8, 1988. Considering all of the evidence presented in a light most favorable to plaintiffs, the court grants NEICO's motion for partial summary judgment on Count V.

Regarding Count VI of plaintiffs' Second Amended Complaint (Revised) involving promissory estoppel claims, the court finds NEICO's motion to be insufficiently supported and therefore denies the motion for partial summary judgment on this count.

The court may, at its discretion, supplement this order with a Memorandum Decision at a later date.

So Ordered.